# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EDDIE LANDRY; MARIO
CONSTANCIO, JR. and MARK
TAMAYO,

       Plaintiffs,

vs.                                                              No. CIV 16-0621 JB/LF

SWIRE OILFIELD SERVICES, L.L.C. and
SWIRE WATER SOLUTIONS, INC.,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Plaintiffs' Motion to Compel Electronic Payroll Records, filed January 26, 2017 (Doc. 36)("First Motion to Compel");[1] (ii) the Defendants' Notice of Non-Appearance and Motion for Protective Order, filed April 6, 2017 (Doc. 52)("Motion for Protective Order"); (iii) the Plaintiffs' Motion to Compel Swire to Comply with 30(b)(6) Notice, filed April 21, 2017 (Doc. 57)("Second Motion to Compel"); (iv) the Defendants' Motion for Enlargement of Time to Produce Documents Received from ADP Payroll, Inc. and Corban OneSource LLC, filed June 14, 2017 (Doc. 73)("Enlargement Motion"); and (v) the Plaintiffs' Motion to Compel Third Party (ADP) Deposition, filed June 15, 2017 (Doc. 76)("Third Motion to Compel"). The Court held hearings on March 23, 2017, and

---

[1]On September 19, 2017, the Court issued an order disposing of the First Motion to Compel in which it granted the Plaintiffs' request to compel the Defendants to produce payroll records in the electronic format that the Plaintiffs requested and the Plaintiffs' request that the Defendants identify which payroll documents correspond with which potential class of plaintiffs. <u>See</u> Order at 3-4, filed September 19, 2017 (Doc. 92)("Order"). In the Order, the Court stated that it would "at a later date issue a Memorandum Opinion more fully detailing its rationale." Order at 1 n.1. This Memorandum Opinion and Order is the promised Memorandum Opinion that details the Order's rationale.

May 12, 2017.  The primary issues are: (i) whether rule 34 of the Federal Rules of Civil Procedure requires the Defendants to produce records in electronically readable format -- the format in which the Plaintiffs request the documents be produced; (ii) whether the Court should compel a third-party deposition of ADP Payroll Services, Inc.[2]; (iii) whether rule 26(c) protects the Defendants from testifying at a deposition about topics related to the Defendants' interactions with payroll companies, the Defendants' efforts to gather discovery documents, the Defendants' methodology in compiling discovery documents, and matters in which the Defendants have already produced responsive documents; and (iv) whether the Court should extend, by one week, the deadline for the Defendants to produce documents received from ADP Payroll and Corban OneSource, LLC in accordance with the Court's Order, filed May 25, 2017 (Doc. 69)("Subpoena Order").  The Court concludes that: (i) rule 34 requires the Defendants to produce the electronic documents in the electronic format that the Plaintiffs request; (ii) it will not compel ADP Payroll's deposition, because a third-party deposition is unnecessary here as the Defendants' production of electronic documents in electronic format affords the relief that the Plaintiffs' seek; (iii) rule 26(c) does not protect the Defendants from testifying at a deposition about their efforts to produce responsive documents, because the testimony sought is relevant; and (iv) the Court grants the Defendants' request for a one-week deadline extension, because there is good cause for such a slight extension.  The Court, accordingly, grants the First Motion to Compel, grants in part and denies in part the Motion for Protective Order, grants in part and denies in part the Second Motion to Compel, grants the Enlargement Motion, and denies the Third Motion to Compel.

---

[2]ADP Payroll is a human resource management software and service provider, generating, among other things, payroll information on employees.  See ADP, Company Information https://www.adp.com/contact-us/company-information.aspx.

## FACTUAL BACKGROUND

The Court draws its facts from the Plaintiffs' Original Complaint, Collective Action, Class Action, and Jury Demand filed June 21, 2016 (Doc. 1)("Complaint"). It assumes as true the Complaint's factual allegations only for the purposes of this Memorandum Opinion and Order. Swire Oilfield Services, LLC is an oilfield services company, which provides oilfield fluid management services to drilling companies across the globe, including drilling companies in New Mexico. See Complaint ¶ 29, at 6. The Plaintiffs are Swire Oilfield's operators who rig oilfield equipment, monitor drilling fluids, and generally assist in the drilling process. See Complaint ¶ 30, at 6. These operators commonly work more than twelve hours a day, and often more than ninety hours a week. See Complaint ¶ 31, at 6. From 2013 until 2016, Swire Oilfield paid those operators under two pay systems, a salaried system and a Fluctuating Work Week ("FWW") system. See Complaint ¶ 32, at 6.[3] The Plaintiffs contend that, under either system, the Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201-19 ("FLSA"), because the Defendants failed to pay the requisite overtime, see Complaint ¶¶ 66-74, at 12-13, and the requisite minimum wage, see Complaint ¶¶ 75-82, at 13-14. Plaintiff Mark Tamayo also contends that, on behalf of himself and others similarly situated, the FWW system violates the New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-1-34 ("NMMWA"). See Complaint ¶¶ 83-88, at 14-15.

---

[3]The FWW system compensates -- on a fixed salary basis -- employees who have a varying work schedule, e.g., employees who may work thirty-five hours one week, forty-five hours the next, and forty-two hours the following. See 29 C.F.R. § 778.114(a)-(b). When there is a "clear mutual understanding" between the parties that the fixed salary is compensation for the hours worked during their week, no matter how many, the FWW system requires that the employee's weekly salary rate equal or exceed the minimum wage rate and that the employee is compensated with overtime pay at one-and-a-half times the ordinary weekly rate. 29 C.F.R. § 778.114(a).

# PROCEDURAL BACKGROUND

On June 21, 2016, the Plaintiffs filed this suit as a proposed collective action under the FLSA, 29 U.S.C. § 216(b), and as a proposed class action under rule 23 of the Federal Rules of Civil Procedure. See Complaint ¶¶ 47-65, at 8-12. With respect to the FLSA, the Plaintiffs bring this suit on two proposed classes' behalf: (i) the Salary Class, i.e., "[a]ll of Defendants' current and former operators throughout the United States who were paid on a salary basis without overtime in the last three years"; and (ii) the FWW Class, i.e., "[a]ll of Defendants' current and former operators throughout the United States who were paid under the fluctuating work week method during the last three years." Complaint ¶ 54, at 9. The Plaintiffs allege that the potential Salary Class members are similarly situated to Landry "in that they share the same duties and were subject to Swire Oilfields's policies of misclassifying non-exempt employees as salaried exempt," and that the FWW Class members are similarly situated to Constancio and Tamayo "in that they share the same duties and were subject to Swire's polices of . . . paying overtime under a non-compliant FWW system." Complaint ¶ 49, at 9. The Plaintiffs assert two causes of action against Swire Oilfield on the proposed Salary Class' and the FWW Class' behalf: (i) failure to pay overtime, in violation of the FLSA, 29 U.S.C. § 207 (Count I), see Complaint ¶¶ 66-74, at 12-13; and (ii) failure to pay the minimum wage, in violation of the FLSA, 29 U.S.C. § 206 (Count II), see Complaint ¶¶ 75-82, at 13-14.

Regarding the Complaint's rule 23 class-action allegations, Tamayo asserts a claim under the NMMWA on the proposed New Mexico Class' behalf, i.e., "[a]ll current and former operators of Defendants who worked in New Mexico during the last three years and who were paid under the fluctuating workweek method." Complaint ¶ 56, at 10. The Complaint alleges that the "FWW method is illegal under New Mexico law," because the NMMWA "requires

payment of one and one-half times the employee's regular rate for each hour worked per week over 40 hours."  Complaint ¶ 85, at 14 (citing N.M. Stat. Ann. § 50-4-22(D)).  The Complaint thus asserts a cause of action against Swire Oilfield for failure to pay overtime, in violation of NMMWA, N.M. Stat. Ann. § 50-4-26(C)-(E) (Count III).

On May 2, 2017, the Court conditionally certified the Salary Class and the FWW Class as collective actions under 29 U.S.C. § 216(b).  See Memorandum Opinion and Order at 1, 252 F. Supp. 3d 1079, 1085 (D.N.M. 2017)(Browning, J.), filed May 2, 2017 (Doc. 59)("Certification MOO").  It reasoned that the Salary Class and FWW Class members are similarly situated with respect to Swire Oilfield's purported FLSA violations, because the proposed classes are comprised of employees with similar positions and duties.  See Certification MOO at 60, 252 F. Supp. 3d at 1118.   The Court concluded that, although Swire Oilfield hired operators with various job titles, "all operators had essentially the same duties: rigging up, monitoring, and rigging down water transfer and chemical blending equipment at oil sites," Certification MOO at 60, 252 F. Supp. 3d at 1118, and all worked "long hours on extended rotations," resulting in substantial overtime hours, Certification MOO at 61, 252 F. Supp. 3d at 1119.  The Court also determined that the proposed class members for their respective classes are similarly situated with respect to Swire Oilfield targeting them with a single decision, policy, or plan, because Swire Oilfield "made a company-wide decision" to classify "nearly all" Salary Class operators as exempt from overtime pay and also made a "company-wide decision" to transfer its salaried operators to the FWW method.  Certification MOO at 64-65, 252 F. Supp. 3d at 1121.

1.    **The First Motion to Compel.**

On January 26, 2017, the Plaintiffs filed the First Motion to Compel.  See First Motion to Compel at 1.  The Plaintiffs contend that the Defendants flouted rule 34 by producing electronic

payroll records sought in PDF format and not in computer readable format as requested.  <u>See</u> First Motion to Compel at 1, 5-6.  The Plaintiffs contend further that the Defendants exercise the requisite control over the payroll records for rule 34 to apply, even though Corban OneSource or, possibly, ADP, has actual possession.  <u>See</u> First Motion to Compel at 6-7.  The Plaintiffs explain that, although the Defendants may lack actual possession of the electronic documents, the Defendants can easily request Corban OneSource to produce those documents in the requested electronic format.  <u>See</u> First Motion to Compel at 6-7.

The Plaintiffs also contend that the 12,249 pages of PDF documents that the Defendants produced were not produced as the documents are kept in the usual course of business.  <u>See</u> First Motion to Compel at 7.  <u>See</u> <u>also</u> Fed. R. Civ. P. 34(b)(2)(E)(i) (requiring parties to produce documents "as they are kept in the usual course of business").  The Plaintiffs support that contention by arguing that the documents came in three separate groups ordered alphabetically, and argue that a company would not group documents that way without labeling or indexing. <u>See</u> First Motion to Compel 7-8.  The Plaintiffs conclude that, because the Defendants did not produce the documents as they are kept in the usual course of business, the Defendants must organize and label them under rule 34(b)(2)(E)(ii).  <u>See</u> First Motion to Compel at 8.  They add that, if the documents are not labeled, the Plaintiffs' discovery request is impermissibly undermined, because the Defendants will know which payroll documents belong to which class, but the Plaintiffs will not.  <u>See</u> First Motion to Compel at 8 (citing <u>Hickman v. Taylor</u>, 329 U.S. 495, 507 (1947)).

**2.      <u>Response to First Motion to Compel</u>.**

On February 9, 2017, the Defendants responded to the First Motion to Compel.  <u>See</u> Response Opposing Plaintiffs' Motion to Compel Electronic Records at 1, filed February 9, 2017

(Doc. 42)("First Motion to Compel Response").  The Defendants argued that they do not have the documents in electronic format and explained that reality to the Plaintiffs several times.  <u>See</u> First Motion to Compel Response at 2-3.  The Defendants add that they stopped doing business with Corban OneSource in 2016, and that the Defendants never had a customer relationship with ADP Payroll nor direct access to ADP Payroll's payroll system.  <u>See</u> First Motion to Compel Response at 3.  They continue that it is "impossible" for the Defendants to produce the records in an electronically searchable format, and that they "can no longer demand the information from Corban OneSource."  Motion to Compel Response at 3.  The Defendants contend that Corban OneSource allowed the Defendants a "one-time download records into PDF files" before their relationship ended.  First Motion to Compel Response at 3.  The Defendants conclude that they discharged their rule 34 duty by producing the relevant records, and that the Court should not require the Defendants to comb through the documents to match which files belong to which Plaintiff sub-class.  <u>See</u> Motion to Compel Response at 4.

        **3.**      <u>**Reply to First Motion to Compel.**</u>

On February 10, 2017, the Plaintiffs replied to the First Motion to Compel Response.  <u>See</u> Plaintiffs' Reply to Swire's Response (Dkt 42) to Motion to Compel Electronic Payroll Records (Dkt 36), filed February 10, 2017 (Doc. 43)("First Motion to Compel Reply").  The Plaintiffs argue that the Court should not credit the Defendants' assertion that "it can no longer demand the information" from its third-party payroll vendor, because the Defendants do not support that contention with a sworn Declaration.  First Motion to Compel Reply at 1.  The Plaintiffs also argue that the Defendants' assertion that they produced the documents as they are maintained in the regular course of business must be false, because the documents are lumped in three separate alphabetical groupings.  <u>See</u> First Motion to Compel Reply at 1-2.  The Plaintiffs maintain that

they made four requests for production seeking documents specific to each of the three proposed classes.  <u>See</u> First Motion to Compel Reply at 2.  They add that the Defendants have responded to each request, but still violate rule 34 by failing to identify which of the payroll records correspond to which request.  <u>See</u> First Motion to Compel Reply at 2.  The Plaintiffs conclude that, if the Defendants do not identify the documents, the Defendants should be judicially estopped from contesting the numerosity element for class or collective action certification, because "there are hundreds, if not thousands, of workers identified in the records produced." First Motion to Compel Reply at 2.

**4.      <u>The March 23, 2017 Hearing</u>.**

The Court held a hearing on March 23, 2017.  <u>See</u> Draft Transcript of Motion Hearing (taken March 23, 2017)("March Tr.").[4]  First, the Plaintiffs reiterated their argument that the Defendants have control over the payroll documents requested, because they can ask their former payroll provider to send those records.  <u>See</u> March Tr. at 24:15-23 (Leyendecker).  They add that the Defendants do not attest that they cannot ask their former payroll provider to generate another copy of the requested records.  <u>See</u> March Tr. at 25:3-8 (Leyendecker).  Second, the Plaintiffs argued that they seek information on three different classes, but when the Defendants produced the responsive records, they refused to identify which documents belong to which class.  <u>See</u> March Tr. at 26:14-23 (Leyendecker).  The Plaintiffs' conclude that the Defendants are "avoiding their obligation to give us full disclosure."  March Tr. at 27:1-2 (Leyendecker).

In response, the Defendants maintained that their payroll provider represented that they could not produce them in electronic form.  <u>See</u> March Tr. at 27:24-28:1 (Gatling).  They also

---

[4]The Court's citations to the March 23, 2017 and May 12, 2017 hearing transcripts refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

say that rule 34 requires only that they produce documents in "a reasonably usable form." March Tr. at 28:10-11 (Gatling). After colloquy with the Court, the Defendants revealed that their third-party payroll provider, Corban OneSource, used ADP Payroll to keep track of payroll. See March Tr. at 29:12-19 (Court, Gatling). The Court asked why the Defendants could not obtain the documents from ADP Payroll in electronic format. See March Tr. at 30: 1-3 (Court). The Defendants represented that they do not know whether ADP Payroll had the documents, but "their understanding is that [ADP Payroll] would have deleted those records." March Tr. at 30:4-9 (Gatling). When asked whether the Defendants had called Corban OneSource about these records since the lawsuit had been filed, the Defendants responded that they had not. See March Tr. at 31:22-32:1 (Court, Gatling). The Defendants maintained, however, that they have discharged their rule 34 duty, because they have produced the documents in a reasonably usable form. See March Tr. at 32:20-22 (Gatling). Regarding identifying which documents correspond to which plaintiff classes, the Defendants agreed to identify which Bates number[5] correspond to which document request. See March Tr. at 33:11-15 (Gatling).

The Court concluded that it would require the Defendants to do two things. See March Tr. at 35:20-21 (Court). First, it told the Defendants to contact Corban OneSource and inquire whether Corban OneSource would contact ADP Payroll for the payroll records in the requested format. See March Tr. at 35:21-24 (Court). Second, it told the Defendants to reach out to ADP Payroll independently and ask whether the documents could be provided in the format requested. See March Tr. at 35:24-36:1 (Court). The Court ordered that, once completed, the Defendants need to send a letter to the Court and to the Plaintiffs explaining the requests' results. See March Tr. at 36:1-2 (Court). The Court explained that, if the companies ended on good terms, the

---

[5]Bates numbers are numbers that are stamped on the bottom of documents produced in discovery for identification purposes.

payroll companies should be able to provide these documents in electronic format. <u>See</u> March Tr. at 36:5-10 (Court). The Court concluded that it would wait for this additional information before ruling on the First Motion to Compel. <u>See</u> March Tr. at 36:14-16 (Court).

**5.** **Defendants' Status Report.**

On April 3, 2017, the Defendants filed a status report with the Court. <u>See</u> Status Report at 1, filed April 3, 2017 (Doc. 51)("Status Report"). The Defendants report that they contacted both Corban OneSource and ADP Payroll, and ADP Payroll relays that it has Swire Oilfield's pay data in a format that can be imported into Microsoft Excel. <u>See</u> Status Report at 1. They also report that the data that can be imported is "(a) gross and net pay per pay period; (b) total regular hours and pay; (c) total overtime hours and pay; and (d) total other earnings per pay period." Status Report at 1. The Defendants conclude that they have requested that data for a period between June, 2013, and March, 2016, and would update the Court and Plaintiffs accordingly. <u>See</u> Status Report at 1-2.

**6.** **The Motion for Protective Order.**

On April 6, 2017, the Defendants filed the Motion for Protective Order. <u>See</u> Motion for Protective Order at 1. The Defendants request that the Court enter a protective order under rule 26(c) protecting the Defendants from testifying in a deposition to the subjects listed at 1, 2, 3, and 7 in the Plaintiffs' First Amended Fed. R. Civ. P. 30(b)(6) Notice of Deposition of Defendants, filed April 6, 2017 (Doc. 52-1)("Deposition Notice").[6] The Defendants argue

---

[6]The subjects listed at 1, 2, 3, and 7 are:

1.  Swire's agreement and interactions with any payroll type company, including Corban OneSource during the period June 21, 2013 to the present.

2.  Swire's efforts to look for, locate and produce documents responsive to

broadly that those issues are not proper rule 30(b)(6) topics for deposition. See Motion for Protective Order at 2. First, they argue that topic 1, which covers the Defendants' agreements and interactions with any payroll company from June 21, 2013, forward, is irrelevant and not proportional to the case's needs. See Motion for Protective Order at 2. The Defendants contend that there is no allegation that the Defendants have not produced payroll information and any information on payroll agreements is irrelevant to how the Defendants paid its employees. See Motion for Protective Order at 2. They also contend that the subject is overbroad and burdensome, because it requests "all interactions with any payroll company," which is both too sweeping and too vague to be relevant to the Plaintiffs' claims. See Motion for Protective Order at 2-3 (citing Kalis v. Colgate-Palmolive Co., 231 F.3d 1049, 1057 n.5 (7th Cir. 2000)).

Second, the Defendants argue that topic 2, which seeks the Defendants to testify about their efforts to locate and produce documents responsive to the Plaintiffs document production

---

Plaintiffs' First Set of Requests for Production to Swire in this case including efforts to determine whether such data are available in electronic format.

3.  The basis for segregating Swire's production, marked by bates numbers 1 through 12,429 into Payroll Data Reports, Timecard reports with Notes, Swire Water Solutions Handwritten time Cards and Payroll Action Notices, including the basis for segregating the Payroll Action Notices into three alphabetical groups, one beginning with Barrett and ending in Woodcox, a second group beginning with Aguinaga and ending in Zavala and the third beginning with Acosta and ending in Wilhite.

. . . .

7.  All facts which Swire contends demonstrate that proceeding as a Rule 23 class action on behalf of the New Mexico Class Members would not be superior to other methods for resolving the claims of such class members.

Deposition Notice at 5.

request, and topic 8,[7] which seeks information on the software program that Swire Oilfield uses to process payroll data, are improper deposition topics, because a deposition on those topics does not relate to any claim or defense, and a motion to compel is the proper way to obtain the information requested -- a motion which the Court has already taken under advisement.  See Motion for Protective Order at 3-4.  The Defendants argue, similarly, that topic 3, which requests the basis for segregating Swire Oilfield's production into three alphabetical groups, is improper for deposition testimony, and the Defendants agreed at the March, 2017, hearing to identify which documents correspond to which request.  See Motion for Protective Order at 4; March Tr. at 33:11-15 (Gatling).  Next, the Defendants contend that topic 7, which covers all facts that the Defendants argue demonstrate that a class action is inferior to other resolution methods, is improper for a deposition, because that topic "is an issue for the fact-finder to conclude." Motion for Protective Order at 4.  Finally, the Defendants argue that topic 9, which seeks Swire Oilfield's payroll processing and time tracking of all of its workers since June 21, 2013, is irrelevant to the Plaintiffs' FLSA claims and that the Court's resolution of the First Motion to Compel should resolve this topic, too.  See Motion for Protective Order at 4-5.

---

[7]The Court notes that the Defendants request a protective order from testifying on deposition topics 1, 2, 3, and 7, see Motion for Protective Order at 2, but argue subsequently that topics 8 and 9 are also improper rule 30(b)(6) testimony, see Motion for Protective Order at 3-4. The Court will consider in its analysis below whether the Defendants are properly protected from testifying on topics 1, 2, 3, 7, 8, and 9.  The subjects listed at 8 and 9 are:

> 8.    The software program or application Swire uses to process payroll, including the version used, the data stored on such system, the ability of such system to export data in an electronic format, and run reports.

> 9.    Swire's processing of payroll and tracking of time worked by its workers since June 21, 2013.

Deposition Notice at 5-6.

**7.      The Response to the Motion for Protective Order and the Second Motion to Compel.**[8]

On April 21, 2017, the Plaintiffs responded to the Motion for Protective Order, <u>see</u> Plaintiffs' Response to Motion for Protection at 1, filed April 21, 2017 (Doc. 56)("Protective Order Response"), and filed their Second Motion to Compel, <u>see</u> Second Motion to Compel at 1.[9]  The Plaintiffs argue that Swire Oilfield has "ignored repeated requests for dates on which a 30(b)(6) witness is available," Second Motion to Compel at 2, and, to contextualize this argument, offer a timeline of relevant events, <u>see</u> Second Motion to Compel at 2-4.  Turning to their argument, the Plaintiffs assert that Swire Oilfield has yet to "correlate the bates ranges of Defendants' production with the four document requests at issue."  Second Motion to Compel at 4.

The Plaintiffs also contend that all of their deposition topics are proper, because discovery's scope, under rule 26, is broad.  <u>See</u> Protective Order Response at 5 (citing <u>Gomez v. Martin Marietta Corp.</u>, 50 F.3d 1511, 1520 (10th Cir. 1995)).   They also argue that the Defendants' arguments are "frivolous," because the Defendants have been aware of the topics since February 10, 2017, but declined to object to them until after the March hearing.  Protective Order Response at 6.  The Plaintiffs conclude that the "Defendants' strategy is obvious.  Delay. Delay.  And then delay some more."  Protective Order Response at 6.

**8.      Second Motion to Compel Response**.

On May 2, 2017, the Defendants responded to the Second Motion to Compel.  <u>See</u>

---

[8]The Court groups these two documents together, because, save for the titles and the relief requested, they are word-for-word copies of each other.

[9]On April 18, 2017, the Plaintiffs filed a Plaintiffs' Response to Motion for Protection (DKT 52) and Motion to Compel Swire to Comply with 30(b)(6), filed April 18, 2017 (Doc. 54), but this document was later marked as "Filed in Error."  The Court, accordingly, will not consider the document that was filed in error.

Response to Plaintiffs' Motion to Compel Swire to Comply with 30(b)(6) Notice at 1, filed May 2, 2017 (Doc. 61)("Second Motion to Compel Response").  The Defendants represent that, since the Second Motion to Compel, they had scheduled Swire Oilfield's deposition, so the Plaintiffs' complaints with respect to scheduling are rendered moot.  <u>See</u> Second Motion to Compel Response at 1.  The Defendants also represent that, on April 18, 2017, they served an updated document response to the Plaintiffs, correlating the documents served with Bates numbers so that the plaintiffs would know which documents corresponded with which request.  <u>See</u> Second Motion to Compel Response at 2.  The Defendants argue that the Plaintiffs do not address their Motion for Protective Order's merits, but instead "dismiss them as frivolous."  Second Motion to Compel Response at 2.

9.     **<u>Motion to Quash Subpoena</u>**.

On May 2, 2017, the Defendants also moved to quash subpoenas that the Plaintiffs issued on ADP Payroll and Corban OneSource.  <u>See</u> Defendants' Motion to Quash Subpoenas at 1, filed May 2, 2017 (Doc. 60)("Motion to Quash").  The Defendants note that, in the subpoenas, the Plaintiffs seek electronic payroll records from ADP Payroll and Corban OneSource directly, in addition to "payroll and other records that are not relevant to Plaintiffs' claims or Swire's defenses."  Motion to Quash at 2.  The Defendants argue that the subpoena is cumulative, duplicative, irrelevant, not proportional, and that the Plaintiffs' request for all of Swire Oilfield's employees' payroll records is outside the litigation's scope.  <u>See</u> Motion to Quash at 2.

10.     **<u>Motion to Quash Response</u>.**

On May 11, 2017, the Plaintiffs responded to the Defendants' Motion to Quash.  <u>See</u> Plaintiffs' Response to Swire's Motion to Quash Subpoenas (DKT 60) at 1, filed May 11, 2017 (Doc. 64)("Motion to Quash Response").  The Plaintiffs contend that the Defendants are

"actively trying to delay" production. Motion to Quash Response at 1-2. To support that assertion, they recount that they requested documents from the Defendants in September, 2016, but the Defendants, as of May 11, 2017, still have not produced the documents in the requested format, "[d]espite the [documents'] ready availability." Motion to Quash Response at 2. The Plaintiffs contend that the Defendants' objections to the Plaintiffs' subpoenas are "patently frivolous," because discovery's scope is broad. Motion to Quash Response at 3-4 (citing <u>Gomez v. Martin Marietta Corp.</u>, 50 F.3d at 1520). They conclude by requesting the Court to overrule the Motion to Quash. <u>See</u> Motion to Quash Response at 5.

      **11.**    <u>**The May Hearing**</u>.

      On May 12, 2017, the Court held a hearing. <u>See</u> Draft Transcript of Motion Hearing (taken May 12, 2017)("May Tr."). The Defendants began by arguing for their Motion for Protective Order. <u>See</u> May Tr. at 2:19-25 (Court, Gatling). The Defendants maintain that a deposition is not the appropriate way to obtain information on the payroll records; rather a motion to compel is the proper vehicle, and the Court has already considered that motion. <u>See</u> May Tr. at 3:21-4:4 (Gatling). The Plaintiffs responded, focusing on the depositions' topic 1, that they are "just trying to figure out . . . what kind of records of the payroll data exists," and insist that this "is just a general topic" to figure out "what information is out there, who has it, and what's available for us to get." May Tr. at 5:1-13 (Leyendecker). The Defendant countered that, if that is the information which the Plaintiffs actually want, the topic should be "the payroll records," which the Defendants have already produced, and not "Swire's agreements and interactions with" payroll companies. May Tr. at 5:16-21 (Gatling). The Plaintiffs explained, however, that the reason that they seek the payroll agreements is that they believe those agreements will reveal "the types of data that the payroll company" keeps on the Defendants'

behalf.  May Tr. at 6:6-10 (Leyendecker).   The Court orally denied the Motion for Protective Order "as to this topic," explaining that sometimes "you have to do a little discovery to get discovery" and that this is one of those situations where it is appropriate for deposition testimony.  May Tr. at 7:2-8:4 (Court).

The Defendants subsequently turned to whether deposition questioning on the Defendants' efforts to produce documents responsive to the Plaintiffs' request is proper.  <u>See</u> May Tr. at 8:6-24 (Gatling).   The Defendants explained that they had produced responsive documents in the requested electronic format, so there is no need to have deposition testimony on that subject.  <u>See</u> May Tr. at 8:6-24 (Gatling).[10]  The Plaintiffs responded that questions about how documents are produced are commonly covered in depositions and that it is a particularly relevant line of questioning here, because the Defendants "took the position in writing that it could not obtain any electronic records."  May Tr. at 9:2-14 (Leyendecker).  The Defendants refuted that they had taken that position in writing; rather they had taken the position that the Defendants "did not have [the documents] in electronic format."  May Tr. at 10:1-4 (Gatling). The Court then ruled orally that it will allow this topic for deposition testimony, because it is fair for the Plaintiffs to explore whether they had obtained all of the payroll documents.  <u>See</u> May Tr. at 11:4-11 (Court).  It explained that the case is "to a great degree" going to be about "who was paid and how much," so documentary payroll evidence is highly relevant.  May Tr. at 11:13-15 (Court).

The Defendants turned to topic 7 and argued it is not relevant deposition testimony, because the topic's scope -- all facts demonstrating that a class action is superior than other methods to resolve the Plaintiffs' claims -- is the ultimate issue for the fact finder to conclude.

_____

[10]Although not expressly stated in the transcript, this issue refers to deposition topic 2. <u>See</u> Deposition Notice at 6.

See May Tr. at 11:23-12:9 (Gatling).  The Plaintiffs responded that the topic covers the facts that bear on superiority, which, under rule 23, are relevant and not legal conclusions.  See May Tr. at 12:12-24 (Leyendecker).  The Court mused that the topic struck it as a contention interrogatory and not one easily done at a deposition, and asked whether the Plaintiffs would be willing to change the topic to a contention interrogatory.  See May Tr. at 13:17-25 (Court); id. at 14:8-15 (Court).  The Plaintiffs agreed to withdraw the topic in favor of a contention interrogatory, but argued that they are entitled to cross-examine a witness about the answers at a later date.  See May Tr. at 14:16-23 (Leyendecker).  The Defendants also agreed to a contention interrogatory. See May Tr. at 17:25-18:1 (Gatling).  The Court subsequently granted in part the Motion for Protective Order as to topic 7 without prejudice, so that the Plaintiffs may renew their request to depose someone on the contention interrogatory's answer.  See May Tr. at 18:12-19 (Court).

The Defendants then argued that topic 9 is irrelevant, because how Swire Oilfield processed its payroll "is not probative of whether or not [the Defendants] paid people on a salary" or on a FWW basis.  See May Tr. at 19:19-20:4 (Gatling).  The Plaintiffs responded that, once again, they are just trying to uncover what actions the Defendants have taken.  See May Tr. at 20:6-10 (Leyendecker).  The Defendants countered that the Plaintiffs already know how they process the payroll records -- they use Corbin OneSource and ADP.  See May Tr. at 21:2-5 (Gatling).  The Court orally denied the motion, because the questioning is "traditional 30(b)(6), you've got the documents and you want to start asking questions about th[ose documents]."  May Tr. at 21:11-14 (Court).

The Plaintiffs subsequently raised a new issue that, in their rule 30(b)(6) notice, they request the Defendants to produce six categories of documents, and asked whether the

Defendants intend to produce those documents.  <u>See</u> May Tr. at 21:24-22:9 (Leyendecker).[11]

The Defendants objected, because they had previously objected to producing those documents, the Plaintiffs have not moved to compel production, and the documents requested appear duplicative to the deposition's scope.  <u>See</u> May Tr. at 22:12-23:11 (Gatling).  The Plaintiffs countered that they are entitled to both the documents and to depositions on the documents.  <u>See</u> May Tr. at 23:15-19 (Leyendecker).  Turning to the first requested production, the Court ruled that the Defendants need to produce the agreements between the Defendants and its payroll companies, because "when you have a witness, even a very prepared 30(b)(6) witness, if you don't have the document it makes questioning of that person very difficult."  May Tr. at 25:17-25

---

[11]The documents requested are:

1.      All agreements between Swire and any payroll type services company, including Corban OneSource, that were in force at any point during the period June 21, 2013 to the present.

2.      All emails and other documents, dated after Swire's business relationship with Corban OneSource ended, that relate in any way to Swire's attempts to obtain payroll related data and information from Corban OneSource

3.      All emails and other documents that reflect communications between Swire and Corban OneSource that relate in any way to Plaintiffs' First Set of Requests for Production to Swire in this case.

4.      All emails and other documents, dated between January 1, 2016 and the present, that relate in any way to Swire's ability to request and/or obtain records from Corban OneSource

5.      All documents related to Topic 7 in Attachment A above.

6.      Copy of all user manuals and similar guides for the software Swire uses to process payroll and track time for its workers that have been in effect since June 21, 2013.

<u>See</u> Deposition Notice at 7.

(Court).  The Court subsequently ruled that the other documents requested are also relevant and ordered their production for the same reasons.  See May Tr. at 28:12-14 (Court).

Turning to the Motion to Quash, the Defendants argued that it is moot, because the Defendants have produced the requested documents.  See May Tr. at 29:18-19 (Gatling).  The Plaintiffs rejoined that it has not been mooted, because the documents that the Defendants produced do "not contain all the information that we know ADP has."  May Tr. at 33:10-11 (Leyendecker). They explained that the documents they already have demonstrate that ADP Payroll has records of New Mexico state tax withholdings for each employee, which demonstrates how large the New Mexico class is, yet the Plaintiffs have not received that information.  See May Tr. at 33:12-24 (Leyendecker).  The Plaintiffs also contend that ADP Payroll would have information about how many hours employees worked per day in the relevant pay period, which would demonstrate damages.  See May Tr. at 34:5-11 (Leyendecker). The Defendants rejoined that they have asked ADP Payroll for all available information and that ADP Payroll represents that it has furnished all information.  See May Tr. at 34:11-13 (Gatling). The Court ruled orally that it would deny the Motion to Quash, because it concludes that the information was relevant, but that documents from ADP Payroll needed to be presented to the Defendants first, so that they had an opportunity to filter irrelevant employees from the eventual document production.  See May Tr. at 36:25-38:4 (Court).  On May 25, 2017, the Court entered an order memorializing the Hearing's oral order granting in part and denying in part the Motion to Quash.  See Subpoena Order at 1.  It ordered that ADP Payroll and Corban OneSource produce the records which the subpoena requests only to Swire Oilfield by May 30, 2017, and ordered Swire Oilfield to produce the records to the Plaintiffs by June 14, 2017.  Subpoena Order at 1.

12.     **Enlargement Motion.**

The Defendants move for a one-week extension to the Subpoena Order's deadline.  See Enlargement Motion at 1.   The Defendants argue that an extension is proper, because, "immediately upon receipt of the documents," the Defendants began processing the documents for production to the Plaintiffs, but that ADP Payroll produced the documents in PDF format, so the Defendants had to redact many documents to protect Swire Oilfield employee's personal information.  Enlargement Motion at 1.  They also argue that an extension is proper, because Corban OneSource produced non-responsive records, some in PDF format, which also had to be reviewed for redaction.  See Enlargement Motion at 1-2.  Finally, they conclude that granting an extension will not delay the case, because the Plaintiffs have many of the records already and because there is no scheduling order that an extension would affect.  See Enlargement Motion at 2.

13.     **Third Motion to Compel.**

The Defendants filed a Third Motion to Compel requesting that the Court order ADP Payroll to appear for the deposition that they originally requested in their subpoena.  See Third Motion to Compel at 2.  As grounds for this request, they argue that the subpoenas instruct ADP Payroll and Corban OneSource to produce records in their native format, but that the Defendants represent in their Enlargement Motion that ADP Payroll and Corban OneSource produced those records in PDF format.  See Third Motion to Compel at 1.  They conclude that a deposition is justified, because they requested these records nine months ago, they still have not received them, and that they should receive them in their native format as they request.  See Third Motion to Compel at 1.

# LAW REGARDING DISCOVERY

Rule 34 governs discovery requests for tangible objects and states:

A party may serve on any other party a request within the scope of <u>Rule 26(b)</u>:

    **(1)**    to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

        **(A)**    any designated documents or electronically stored information -- including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations -- stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

        **(B)**    any designated tangible things; or

    **(2)**    to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34(a). Discovery's proper scope is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). The factors that bear upon proportionality are: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26 (b)(1).

Discovery's scope under rule 26 is broad. See <u>Gomez v. Martin Marietta Corp.</u>, 50 F.3d at 1520; <u>Sanchez v. Matta</u>, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information."). The federal discovery rules reflect

the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. at 507. A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." McGee v. Hayes, 43 F. App'x. 214, 217 (10th Cir. 2002)(unpublished).[12] "'Discovery . . . is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" Rivera v. DJO, LLC, No. 11-1119, 2012 WL 3860744, at *1 (D.N.M. August 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. 00-7697, 2002 WL 1967023, at *2 (S.D.N.Y. 2002)(Knapp, J.)). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted).

The 2000 amendments to rule 26(b)(1) began narrowing the substantive scope of discovery and injected courts deeper into the discovery process. See Simon v. Taylor, No. 12-0096, 2015 WL 2225653, at *23 (D.N.M. April 30, 2015)(Browning, J.). Before the 2000 amendments, rule 26(b)(1) defined the scope of discovery as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending actions, whether it relates to

---

[12]McGee v. Hayes is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that McGee v. Hayes, Miller v. Regents of the Univ. of Colo., Price v. Cochran, and Ruleford v. Tulsa World Pub. Co. have persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

> the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1)(1996). The 2000 amendments made the following changes, shown here with the deleted language stricken and the added material underlined:

> Parties may obtain discovery regarding any matter, not privileged, that ~~which~~ is relevant ~~to the subject matter involved in the pending actions, whether it relates to~~ the claim or defense of ~~the party seeking discovery or to the claim or defense of~~ any ~~other~~ party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. <u>For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant</u> ~~The~~ information ~~sought~~ need not be admissible at the trial if discovery the ~~information sought~~ appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Putting aside the last sentence's changes -- which the advisory committee's notes make clear was a housekeeping amendment to clarify that inadmissible evidence must still be relevant to be discoverable -- the 2000 amendments have two effects: (i) they narrow the substantive scope of discovery in the first sentence; and (ii) they inject courts into the process in the entirely new second sentence.

> In 1978, the Committee published for comment a proposed amendment, suggested by the Section of Litigation of the American Bar Association, to refine the scope of discovery by deleting the "subject matter" language. This proposal was withdrawn, and the Committee has since then made other changes in the discovery rules to address concerns about overbroad discovery. Concerns about costs and delay of discovery have persisted nonetheless, and other bar groups have repeatedly renewed similar proposals for amendment to this subdivision to delete the "subject matter" language. Nearly one-third of the lawyers surveyed in 1997 by the Federal Judicial Center endorsed narrowing the scope of discovery as a means of reducing litigation expense without interfering with fair case resolutions. [Federal Judicial Center, T. Willging, J. Shapard, D. Stienstra, & D. Miletich, Discovery and Disclosure Practice, Problems, and Proposals for Change] 44–45 (1997). The Committee has heard that in some instances, particularly cases involving large quantities of discovery, parties seek to justify

discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the "subject matter" involved in the action.

The amendments proposed for subdivision (b)(1) include one element of these earlier proposals but also differ from these proposals in significant ways. The similarity is that the amendments describe the scope of party-controlled discovery in terms of matter relevant to the claim or defense of any party. The court, however, retains authority to order discovery of any matter relevant to the subject matter involved in the action for good cause. The amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery. The Committee has been informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery. Increasing the availability of judicial officers to resolve discovery disputes and increasing court management of discovery were both strongly endorsed by the attorneys surveyed by the Federal Judicial Center. See Discovery and Disclosure Practice, supra, at 44. Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

**The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.**

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. When judicial intervention is invoked, the actual scope of discovery

should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

The amendments also modify the provision regarding discovery of information not admissible in evidence. As added in 1946, this sentence was designed to make clear that otherwise relevant material could not be withheld because it was hearsay or otherwise inadmissible. The Committee was concerned that the "reasonably calculated to lead to the discovery of admissible evidence" standard set forth in this sentence might swallow any other limitation on the scope of discovery. Accordingly, this sentence has been amended to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence. As used here, "relevant" means within the scope of discovery as defined in this subdivision, and it would include information relevant to the subject matter involved in the action if the court has ordered discovery to that limit based on a showing of good cause.

Finally, a sentence has been added calling attention to the limitations of subdivision (b)(2)(i), (ii), and (iii). These limitations apply to discovery that is otherwise within the scope of subdivision (b)(1). The Committee has been told repeatedly that courts have not implemented these limitations with the vigor that was contemplated. See 8 Federal Practice & Procedure § 2008.1 at 121. This otherwise redundant cross-reference has been added to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery. Cf. Crawford–El v. Britton, [523 U.S. 574] (1998)(quoting Rule 26(b)(2)(iii) and stating that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly").

Fed. R. Civ. P. 26 advisory committee's notes (emphasis added).

One gets the impression from reading the advisory committee's notes that the amendment was not intended to exclude a delineable swath of material so much as it is intended to send a signal to district judges to become more hands-on in the process of regulating -- mostly limiting -- discovery on relevance grounds alone. The "two effects" of the 2000 amendments might, thus, be only one effect: directing district judges to roll up their sleeves and manage discovery, and to do so on a relevance basis. The change in substantive scope from "subject matter," to "claim or defense," would, therefore, seem to "add teeth" to the relevance standard instead of narrowing

that standard. It is not surprising that the Supreme Court of the United States of America and Congress would want to increase judicial presence: "relevance" is a liberal concept in the context of trial. Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

Of course, regardless of the Court's musings about the rules, courts should also seek to give substantive content to amendments. Read literally, the rule does not permit parties to discover information relevant only to the claim or defense of another party; they must use discovery only to investigate their own claims and defenses. More problematically, however, the rule may prevent using the Federal Rules' compulsory discovery process to obtain "background" information not specifically relevant to any one claim or defense -- e.g., a plaintiff naming a pharmaceutical company as a defendant and then using discovery to educate itself generally about medicine, biochemistry, and the drug industry by using the defendant's expertise.

In <u>In re Cooper Tire & Rubber Co., 568 F.3d 1180 (10th Cir. 2009)</u>, the United States Court of Appeals for the Tenth Circuit clarified that the 2000 Amendments to rule 26 "implemented a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action." 568 F.3d at 1188. The Tenth Circuit further stated that,

> when a party objects that discovery goes beyond that relevant to the claims or defenses, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action." This good-cause standard is intended to be flexible. When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be. "[T]he actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader

discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested."

568 F.3d at 1188–89 (quoting the advisory committee's notes to the 2000 amendments to Fed. R. Civ. P. 26(b)(1))(citations and footnote omitted)(alteration in original).

The 2015 amendments to rule 26(b)(1) continued this process of narrowing discovery's substantive scope and injecting courts further into the discovery process. The 2015 amendment made notable deletions and additions, both of which emphasized the need to make discovery proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1), provides[13]:

> *(1)*      *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ~~including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)~~ <u>and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.</u>

Fed. R. Civ. P. 26(b)(1)(alterations added).

The Committee Notes state that the first deletion does not make a substantive change. Rather, the deletion was made because "[d]iscovery of such matters is so deeply entrenched" in standard discovery that including it would be "clutter." Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.[14]

---

[13]The deletions are stricken through and the additions are underlined.

Regarding the second deletion, the Committee Notes explain that the former provision for discovery of relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence" is also deleted.[15]    Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.

> The phrase has been used by some, incorrectly, to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the "reasonably calculated" phrase to define the scope of discovery "might swallow any other limitation on the scope of discovery."  The 2000 amendments sought to prevent such misuse by adding the word "Relevant" at the beginning of the sentence, making clear that "'relevant' means within the scope of discovery as defined in this subdivision. . . ."  The "reasonably calculated" phrase has continued to create problems, however, and is removed by these amendments.  It is replaced by the direct statement that "Information within this scope of discovery need not be admissible in evidence to be discoverable."    Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery.

Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.  The deletion, therefore, did not necessarily change discovery's scope, but clarified it.  Accordingly, "[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  State Farm Mutual Auto. Ins. Co. v. Fayda, No. 14-9792, 2015 WL 7871037, at *2 (S.D.N.Y. 2015)(Francis IV, M.J.)(internal

---

[14]The Court regrets this deletion.  Moving things out of the statute's text often creates mischief, especially for courts that rely heavily on the text's plain language.  The drafters might be astonished how often the Court sees objections to interrogatories and requests that seek basic information about documents.  The rule is well-established because the deleted language was in the rule; now that the language is not in the rule, the rule may be eroded or, more likely, ignored or overlooked by those who do not spend time in advisory notes' thicket.  What the advisory comments describe as "clutter" is a simple instruction to practitioners who do not practice in federal court every day for every case.  This deletion might incrementally increase unnecessary litigation rather than shorten it.  Some of the amendments seem more designed to help the nation's large corporations, represented by some of the nation's most expensive law firms, cut down expenses than they are to help courts and practitioners in more routine cases.

[15]Arguably, older lawyers will have to learn a new vocabulary and ignore the one they have used for decades.  If the changes were not made to change the scope of discovery, it is unclear what the benefit of all this really is.

quotation marks omitted)(quoting <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978)).

The most notable addition to rule 26(b) is the proportionality concept. Rule 26(b)(2)(C)(iii) has always limited overly burdensome discovery and required proportionality. <u>See</u> Fed. R. Civ. P. 26(b)(2)(C)(iii) (pre-2015 version). The proportionality requirement was relocated to 26(b)(1) to address the "explosion" of information that "has been exacerbated by the advent of e-discovery."[16] Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment. Describing how e-discovery is the driving factor in the 2015 amendment, the Committee Notes state:

> The burden or expense of proposed discovery should be determined in a realistic way. This includes the burden or expense of producing electronically stored information. Computer-based methods of searching such information continue to develop, particularly for cases involving large volumes of electronically stored information. Courts and parties should be willing to consider the opportunities for reducing the burden or expense of discovery as reliable means of searching electronically stored information become available.

---

[16]This relocation -- rather than substantive change -- is one reason that the Court is skeptical that the 2015 amendments will make a considerable difference in limiting discovery or cutting discovery costs. Courts have been bringing common sense and proportionality to their discovery decisions long before the 2015 amendments. <u>See</u> <u>Aguayo v. AMCO Ins. Co.</u>, 59 F. Supp. 3d 1225, 1275 (D.N.M. 2014)(Browning, J.)("[T]he Court expects that discovery and motion practice bear some proportionality to the case's worth."); <u>Cabot v. Wal-Mart Stores, Inc.</u>, No. 11-0260, 2012 WL 592874, at *11–12 (D.N.M. 2012)(Browning, J.)(limiting the scope of discovery because it was unduly burdensome in relation to the relevance and need). The real import of the rule is that it will likely lead to more "proportionality" objections and more disputes that the district courts will have to resolve, which is what the drafters apparently intended. It is unclear how more judicial involvement in discovery can be squared with a federal court docket that is at a breaking point already. It is also unclear what was wrong with the old goal of discovery of being largely self-executing. The new rules also require attorneys to learn the new vocabulary of "proportionality," delete their old stock legal sections from their briefs, and rewrite these new sections to use the correct language. Older lawyers must be particularly alert to read and learn the new rules, read the comments, and understand the thrust of the drafting. Finally, given that "proportionality" is a very subjective standard, it will be hard for any court to sanction any attorney for raising this objection. In sum, the rules are just as likely to increase the costs of discovery as to decrease it.

Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.

Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to rule 26(b) "crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality."[17] Chief

[17]The Rules Enabling Act, 28 U.S.C. §§ 2071-2077, empowers the federal courts to prescribe rules for the conduct of their business. See 28 U.S.C. § 2071. The Judicial Conference -- the policy making body of the federal judiciary -- has overall responsibility for formulating those rules. See Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States, available at http://www.supremecourt.gov/publicinfo/yearend/year-endreports.aspx ("2015 Year–End Report"). The Chief Justice leads the Judicial Conference. The Judicial Conference's Committee on Rules of Practice and Procedure, known as the Standing Committee, solicits guidance from advisory committees and conferences to draft proposed rules and amendments for the Judicial Conference's consideration. See 2015 Year-End Report. Chief Justice Roberts, a former clerk for Chief Justice William Rehnquist, appointed the Honorable David Campbell, United States District Judge for the District of Arizona, also a former Rehnquist clerk and President George W. Bush appointee, to chair the Civil Rules Advisory Committee. Campbell and David Levi, Dean of the Duke University School of Law, a former clerk to Justice Lewis Powell, and former chief judge of the United States District Court for the Eastern District of California, appointed as United States Attorney by President Ronald Reagan and appointed to the Eastern District of California by President George W. Bush, led the effort to increase proportionality and hands-on judicial case management in the 2015 amendments. See Report to the Standing Committee at 4, Advisory Committee on Civil Rules (May 8, 2013), available at http://www.uscourts.gov/rules-policies/archives/committeereports/advisory-committee-rules-civil-procedure-may-2013. After the Judicial Conference concurred on the 2015 amendments, it sent the proposed rules and amendments to the Supreme Court, which approved them. Chief Justice Roberts submitted the proposed rules to Congress for its examination. See 2015 Year-End Report at 6. Because Congress did not intervene by December 1, the new rules took effect. Some scholars have noted that the rules reflect the conservative nature of those who have participated in drafting the amendments. See Edward A. Purcell, Jr., From the Particular to the General: Three Federal Rules and the Jurisprudence of the Rehnquist and Roberts Courts, 162 U. Pa. L. Rev. 1731 (2014); Corey Ciocchetti, The Constitution, The Roberts Court, and Business: The Significant Business Impact of the 2011-2012 Supreme Court Term, 4 Wm. & Mary Bus. L. Rev. 385 (2013). In particular, the New Mexico Trial Lawyer published an article asserting that the amendments favored corporate defendants, which was partially the result of Chief Justice Roberts' appointment of "corporate-minded judges to the Rules Advisory Committee that drafted the amendments." Ned Miltenberg & Stuart Ollanik, The Chief Umpire is Changing the Strike Zone, at 1, The New Mexico Trial Lawyer (Jan. /Feb. 2016). The Court shares some of the concerns with the new amendments being pro-business and giving corporations new tools to limit plaintiffs' discovery.

Justice John Roberts, 2015 Year–End Report on the Federal Judiciary at 6, Supreme Court of the United States, available at http://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx ("2015 Year-End Report"). He states that the proportionality concept seeks to "eliminate unnecessary or wasteful discovery," and to impose "careful and realistic assessment of actual need." 2015 Year-End Report at 7. This assessment may, as a practical matter, require "judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." State Farm Mutual Auto. Ins. Co. v. Fayda, 2015 WL 7871037, at *2 (internal quotation marks omitted). The burden of demonstrating relevance remains on the party seeking discovery, and the newly revised rule "does not place on the party seeking discovery the burden of addressing all proportionality considerations." Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment. See Dao v. Liberty Life Assurance Co. of Boston, No. 14-4749, 2016 WL 796095, at *3 (N.D. Cal. February 23, 2016)(LaPorte, M.J.)(observing that the 2015 amendment "reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses or objections"); Williams v. U.S. Envt'l Servs., LLC, No. 15-0168, 2016 WL 617447, at *1 n.2 (M.D. La. February 16, 2016)(Bourgeois, M.J.). In general, "the parties' responsibilities [] remain the same" as they were under the rule's earlier iteration so that the party resisting discovery has the burden of showing undue burden or expense. Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment. See Dao v. Liberty Life Assurance Co. of Boston, 2016 WL 796095, at *3 (noting that, "while the language of the Rule has changed, the amended rule does not actually place a greater burden on the parties with respect to their discovery obligations").

Like with the 2000 amendments, it is unsurprising that the drafters are unable to articulate precise language narrowing the discovery's substantive scope. Instead of being Aristotelian and trying to draft rules, the drafters largely opted to make federal judges Plato's enlightened guardians. They have decided that no single general rule can adequately take into account the infinite number of possible permutations of different claims, defenses, parties, attorneys, resources of parties and attorneys, information asymmetries, amounts in controversy, availabilities of information by other means, and other factors. They have dropped all discovery disputes into judges' laps. The drafters have decided that this determination requires the individualized judgment of someone on the scene, and that presence is what the rulemakers want when they: (i) encourage district judges to take a firmer grasp on the discovery's scope; and (ii) put their thumbs on the scale in favor of narrower discovery in the rule's definition of the scope of discovery.

Rule 34 allows a party to serve requests to produce certain items "on any other party . . . in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(emphasis added). See Hickman v. Taylor, 329 U.S. at 504 (explaining that rule 34 "is limited to parties to the proceeding, thereby excluding their counsel or agents"). Applying this standard, courts have found that corporations control documents in their subsidiaries' hands, clients control case files in their attorneys' hands, and patients control health records in their healthcare providers' hands. See United States v. Stein, 488 F. Supp. 2d 350, 360-62 (S.D.N.Y. 2007)(Kaplan, J.); CSI Inv. Partners II, L.P. v. Cendant Corp., 2006 WL 617983, at *6 (S.D.N.Y. March 13, 2006)(Eaton, M.J.)(compelling a client's attorney to disclose documents in the attorney's possession regarding the attorney's representation of that particular client, but only insofar as the documents were relevant). An employee's or corporation's ability to access the documents in the normal course

of business weighs in favor of finding control.  See, e.g., Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue, 839 F.2d 131, 140-41 (3d Cir. 1988)(where "agent-subsidiary can secure documents of the principal-parent to meet its own business needs . . . the courts will not permit the agent-subsidiary to deny control for purposes of discovery"); Camden Iron & Metal v. Marubeni America Corp., 138 F.R.D. 438, 441 (D.N.J. 1991)(including "demonstrated access to documents in the ordinary course of business" in list of factors to be considered in determining control).

Courts have specifically considered whether clients control information in their attorneys' hands.  Because a client has the right "to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control." Am. Soc. For Prevention of Cruelty to Animals v. Ringling Bros. and Barnum & Bailey Circus, 233 F.R.D. 209, 212 (D.D.C. 2006)(Facciola, M.J.).  See Poppino v. Jones Store Co., 1 F.R.D. 215, 219 (W.D. Mo. 1940)("It is quite true that if an attorney for a party comes into possession of a document *as attorney for that party* his possession of the document is the possession of the party.")(emphasis in original).  Consequently, a party may be required to produce a document that it has turned over to its attorney when the document relates to the attorney's representation of that client on a specific matter.  See In re Ruppert, 309 F.2d 97, 98 (6th Cir. 1962)(per curiam); Hanson v. Garland S.S. Co., 34 F.R.D. 493, 495 (N.D. Ohio 1964)(Connell, J.)(concluding that witness statements taken by a party's attorney in preparation of the case were within the party's control and subject to production under rule 34 on a proper showing); Kane v. News Syndicate Co., 1 F.R.D. 738, 738-39 (S.D.N.Y. 1941)(Mandelbaum, J.)(determining that a plaintiff in an action for copyright infringement could require the defendants' attorneys to produce a document from which the plaintiff hoped to ascertain whether

material had been obtained from his copyrighted works).

> The mere fact, however, that the attorney for a party has possession of a document does not make his possession of the document the possession of the party. The paper may be one of his private papers which he had before the relation of attorney and client was established. It is inconceivable that he should be required to produce such a paper for the inspection of his client's adversary. The paper which he has in his possession may be the property of some other client. It is inconceivable that he should be compelled to produce the document belonging to another client because the adversary of one of his clients demands it.

Poppino v. Jones Store Co., 1 F.R.D. at 219. See Hobley v. Burge, 433 F.3d 946 (7th Cir. 2006)(observing that a party may not have had control over its former attorney's documents); Ontario Inc. v. Auto Enterprises, Inc., 205 F.R.D. 195 (E.D. Mich. 2000). Simply put, if a person, corporation, or a person's attorney or agent can pick up a telephone and secure the document, that individual or entity controls it. See Simon v. Taylor, 2014 WL 6633917, at *34 ("Control is defined as the legal right to obtain documents upon demand.").

## LAW REGARDING MOTIONS TO COMPEL

Rule 37 provides enforcement mechanisms for rule 34. According to rule 37, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond. See Fed. R. Civ. P. 37(a)(2)(B). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). See Lewis v. Goldsberry, No. 11-0283, 2012 WL 681800, at *4 (D.N.M. February 27, 2012)(Browning, J.). Rule 37(a) provides:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a). If a party refuses to produce documents through proper discovery, a

defendant should move to compel production pursuant to rule 37. See <u>Lane v. Page</u>, 727

F. Supp. 2d 1214, 1236 n.15 (D.N.M. 2010)(Browning, J.). Rule 37(a)(5)(B)-(C) provide:

> **(B)**   *If the Motion Is Denied.* If the motion is denied, the court may issue any
> protective order authorized under Rule 26(c) and must, after giving an
> opportunity to be heard, require the movant, the attorney filing the motion,
> or both to pay the party or deponent who opposed the motion its
> reasonable expenses incurred in opposing the motion, including attorney's
> fees. But the court must not order this payment if the motion was
> substantially justified or other circumstances make an award of expenses
> unjust.
>
> **(C)**   *If the Motion Is Granted in Part and Denied in Part.* If the motion is
> granted in part and denied in part, the court may issue any protective order
> authorized under <u>Rule 26(c)</u> and may, after giving an opportunity to be
> heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. P. 37(a)(5). Where parties have taken legitimate positions, and the Court grants in

part and denies in part a motion to compel discovery responses, courts generally conclude that

justice requires that each party be responsible for their own fees and costs. See <u>Pulsecard, Inc. v.

Discover Card Servs.</u>, 168 F.R.D. 295, 310-11 (D. Kan. 1996)(Rushfelt, M.J.); <u>Greater Rockford

Energy & Tech. Corp. v. Shell Oil Co.</u>, 138 F.R.D. 530, 539 (C.D. Ill. 1991)(Mills, J.).

## LAW REGARDING PROTECTIVE ORDERS

The trial court has discretion to grant a protective order pursuant to rule

26(c). See <u>Morales v. E.D. Etnyre & Co.</u>, 229 F.R.D. 663, 663 (D.N.M. 2005)(Browning,

J.). Rule 26(c) provides that, upon a good cause showing, a court may "issue an order to protect

a party or person from annoyance, embarrassment, oppression, or undue burden or expense,"

which may include forbidding disclosure or discovery. Fed. R. Civ. P.

26(c)(1)(A). <u>Accord</u> <u>Miller v. Regents of the Univ. of Colo.</u>, 188 F.3d 518, 1999 WL 506520, at

*12 (10th Cir. 1999)(unpublished)(reasoning that "[t]he district court is in the best position to

weigh these variables and determine the appropriate limits because, unlike an appellate court, the

district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties").

"It is the party seeking the protective order who has the burden to show good cause for a protective order." <u>Velasquez v. Frontier Med. Inc.</u>, 229 F.R.D. 197, 200 (D.N.M. 2005)(Browning, J.). The party seeking the protective order must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 102 n.16 (1981)(internal quotation marks omitted). Although rule 26(c) is silent on when "the movant must file for a protective order, the United States Court of Appeals for the Tenth Circuit has held that 'a motion under [rule] 26(c) for protection . . . is timely filed if made before the date set for production.'" <u>Montoya v. Sheldon</u>, No. 10-0360, 2012 WL 2383822, at *5 (D.N.M. June 8, 2012)(Browning, J.)(quoting <u>In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.</u>, 669 F.2d 620, 622 n.2 (10th Cir. 1982))(alteration in <u>Montoya v. Sheldon</u>).

In <u>Velasquez v. Frontier Med. Inc.</u>, 229 F.R.D. 197 (D.N.M. 2005)(Browning, J.), the Court denied the defendants' Motion for a protective order. <u>See</u> 229 F.R.D. at 201. The defendants objected to two requests for production from the plaintiff and sought a protection order against the two requests. <u>See</u> 229 F.R.D. at 198–199. The defendants did not provide any affidavits or documentation to support good cause; the court could not discern any specific harm that the defendants would receive if they would answer the two requests for production, and the defendants asserted only general concerns. <u>See</u> 229 F.R.D. at 200. The Court concluded, accordingly, that the defendants did not show that the requests for production would cause annoyance, embarrassment, oppression or undue burden. <u>See</u> 229 F.R.D. at 200.

## <u>LAW REGARDING 30(b)(6)</u>

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides:

> [A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6). "Under Rule 30(b)(6), when a party seeking to depose a corporation announces the subject matter of the proposed deposition, the corporation must produce someone familiar with that subject." <u>Reilly v. Natwest Mkts. Grp. Inc.</u>, 181 F.3d 253, 268 (2d Cir. 1999).

As a general matter, a corporation may designate any person as a corporate representative if he or she can meet the necessary criteria to satisfy rule 30(b)(6). <u>See</u> <u>Gulfstream Worldwide Realty, Inc. v. Phillips Elec. N. Am. Corp.</u>, No. 06-1165, 2007 WL 5704041, at *5 (D.N.M. October 24, 2007)(Browning, J.)(discussing how, sometimes, it may be necessary for a corporation to designate former employees as a rule 30(b)(6) deponent); Moore, § 30.25[3], at 30-71 ("There is no rule that would prevent corporate counsel, or even a corporation's litigation counsel, from serving as a Rule 30(b)(6) deponent.").

Courts have split whether to allow parties to use 30(b)(6) depositions to explore facts underlying legal claims and theories. <u>Compare</u> <u>JPMorgan Chase Bank v. Liberty Mut. Ins. Co.</u>, 209 F.R.D. 361, 362 (S.D.N.Y. 2002)(Rakoff, J.)(denying the discovery request seeking the "defendants' mental impressions, conclusions, opinions, and legal theory") <u>and</u> <u>SEC v. Morelli</u>, 143 F.R.D. 42, 47 (S.D.N.Y.1992)(Leisure, J.)(asserting that "the proposed

Rule 30(b)(6) deposition constitutes an impermissible attempt by defendant to inquire into the mental processes and strategies of the SEC"), with EEOC v. Caesars Entm't, Inc., 237 F.R.D. 428, 432-34 (D. Nev. 2006)(Leen, M.J.)(denying the "defendant's request for a protective order to limit the scope of Rule 30(b)(6) deposition questioning to preclude inquiry into the factual bases for defendant's asserted position statements and affirmative defenses"), and In Re Vitamins Antitrust Litigation, 216 F.R.D. 168, 171-74 (D.D.C. 2003)(Hogan, C.J.)(allowing 30(b)(6) facts and admissions in corporation's antitrust submission to European Commission, stating: "Bioproducts argument that the Rule 30(b)(6) discovery is unnecessary and duplicative is without merit."). The Court has held that the better rule is to allow parties to craft rule 30(b)(6) inquires similar to contention interrogatories, because this rule will ultimately lead to fewer disputes about what subject matter is permitted in 30(b)(6) depositions and advances the policy underlying the rules favoring disclosure of information. See Radian Asset Assur., Inc. v. Coll. of the Christian Bros., 273 F.R.D. 689, 691-92 (D.N.M. 2011)(Browning, J.). If the Court limits rule 30(b)(6) depositions as the Southern District of New York has, courts would have to referee endless disputes about what is permitted and what is not. Moreover, rule 30(b)(6)'s plain language does not limit the deposition in that way. See Fed. R. Civ. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to the organization.").

Rule 26(b)(1) states that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any part's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Rule 30(b)(6) is not "otherwise limited," but unlimited. The Court sees no great problem with allowing overlap between the sorts of information obtained through contention interrogatories and 30(b)(6) depositions. While counsel will have to carefully prepare the 30(b)(6) representative, they must always do so.

## LAW REGARDING RULE 34

Rule 34 governs "Producing Documents, Electronically Stored Information, and Tangible Things, or Entering Onto Land, for Inspection and Other Purposes." Fed. R. Civ. P. 34. The rule's subdivision (a) outlines the scope of discoverable items, and subdivision (b) outlines the procedures to be followed for requesting items, see Fed. R. Civ. P. 34(b)(1), objecting to requests, see Fed. R. Civ. P. 34(b)(2)(C), and producing "documents or electronically stored information," see Fed. R. Civ. P. 34(b)(2)(E). The relevant provision here, rule 34(b)(2)(E) provides:

> (E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
>   (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
>   (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
>   (iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E). There is confusion among courts and commentators regarding the meaning of and the relationship between (E)(i) and (E)(ii), hinging on whether the term

"documents," as used in (E)(i), includes ESI.[18]  The Court has concluded that provisions (E)(i) and (E)(ii) apply to distinct, mutually exclusive categories of discoverable information: documents -- a term that does not include ESI -- governs (E)(i), while (E)(ii), but not (E)(i) governs ESI.  See Anderson Living Tr. v. WPX Energy Prod., LLC, 298 F.R.D. 514, 520-26 (D.N.M. 2014)(Browning, J.).

### 1.    The Evolution of Rule 34 from 1970 to 2006.

Before 1970, rule 34 made no mention of ESI -- by that name or any other -- and allowed only for "the inspection and copying or photographing . . . of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things."  Fed. R. Civ. P. 34 (1964) (amended 1970).  Although it would have been possible for courts to shoehorn the developing ESI technology into one of those categories, in 1970, the federal judiciary recognized the emerging importance of electronic record storage, and the rule was amended to the following: "Any party may . . . inspect and copy[] any designated documents (including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form). . . ."  Fed. R. Civ. P. 34(a) (2000)(amended 2006)(emphasis added). "Documents" was no longer one of several classes of discoverable material, but had become the catchall term for virtually all discoverable material.[19]  The advisory committee notes "make[]

---

[18]"The rules of statutory construction apply to the Federal Rules. . . ."  In re Kubler, No. 11-0048, 2012 WL 394680, at *11 (D.N.M. Jan. 25, 2012)(Browning, J.).  Accord Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, (1993)(applying the expressio unius est exclusion alterius canon when interpreting rule 9(b) of the Federal Rules of Civil Procedure); Hillis v. Heineman, 626 F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure.").

[19]Only "tangible things" remained outside of the "inclusive description of documents" that the new rule furnished.  Fed. R. Civ. P. 34(a), advisory committee's notes on 1970 amendment (1970)(amended 2006).

clear that Rule 34 applies to electronic data compilations," Fed. R. Civ. P. 34 advisory committee's notes, and as technology advanced, courts properly allowed for discovery of ESI under the same procedural framework provided for all other forms of "documents," e.g., Bills v. Kennecott Corp., 108 F.R.D. 459, 461 (D. Utah 1985)(Greene, J)("It is now axiomatic that electronically stored information is discoverable under Rule 34 of the Federal Rules. . . .").

In 1980, with ESI growing in prominence but hard copy discovery still predominant, subdivision (b) of the rule was amended to add the requirement that "[a] party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Fed. R. Civ. P. 34(b), para. 3 (2000)(amended 2006). The reason for this amendment was to put an end to the "apparently not rare" practice of "deliberately . . . mix[ing] critical documents with others in the hope of obscuring significance." Fed. R. Civ. P. 34 advisory committee's notes (quoting Section of Litigation of the American Bar Association, Report of the Special Committee for the Study of Discovery Abuse, 22 (1977)). See United States v. O'Keefe, 537 F. Supp. 2d 14, 19 (D.D.C. 2008)(Facciola, J.)("The Rule was amended in 1980 to prevent the juvenile practice whereby the producing party purposely rearranged the documents prior to production in order to prevent the requesting party's efficient use of them."); In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 351, 363 (N.D. Ill. 2005)(Cole, J.)(stating that the provision is designed to prevent litigants from "deliberately mixing critical documents with masses of other documents to hide their existence or obscure their significance")(citing Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202 v. Admiral Heating & Ventilating, Inc., 104 F.R.D. 23, 36 (N.D.Ill.1984)(Shadur, J.)).

Over time, courts began to interpret the amended rule 34(b) to impose affirmative requirements on all massive productions of documents, with the logic being that the enormity of

a production, alone, could render it useless to the requesting party even without any deliberate mixing on the part of the producing party. See Pass & Seymour, Inc. v. Hubbell Inc., 255 F.R.D. 331, 334 (2008)(Peebles, M.J.)(noting the disfavor that courts have shown to the "dumping of massive quantities of documents, with no indexing or readily apparent organization, in response to a document request from an adversary"). The amendment had the effect of requiring the producing party to turn documents over in an organized, comprehensible arrangement -- either by specifically indexing each document to the request to which it was responsive, or, failing that matching, by producing the documents with the business' filing system or other organizational structure still intact and usable by the requesting party, thus "minimiz[ing] the burden of production while maintaining the internal logic reflecting business use." SEC v. Collins & Aikman Corp., 256 F.R.D. 403, 409 (S.D.N.Y. 2009)(Scheindlin, J.). See CooperVision, Inc. v. CIBA Vision Corp., No. 06-0149, 2007 WL 2264848, at *4 (E.D. Tex. August 6, 2007)(Hines, M.J.)("[P]roduction of records as kept in the usual course of business ordinarily will make their significance pellucid. That is the overarching purpose of the rule."). The usual course of business -- in the days of warehousing large numbers of hard copy documents -- meant giving the requesting party free access to the facility without any culling or reviewing for responsiveness by the producing party.

In the ESI context, the new 34(b)(E)(ii) requirement ended up serving another purpose: in addition to regulating the organization of production, it allowed courts to specify, or at least restrict, the form -- i.e., the file formatting -- of the individual artifacts of ESI being produced. Requiring production of ESI in the usual course of business was widely interpreted to mean turning over computer files in their "native form" -- the format in which they were kept with the party before the commencement of litigation -- or some agreed-upon alternative. Williams v.

Sprint/United Mgmt. Co., 230 F.R.D. 640, 648-49 (D. Kan. 2005). See Fed. R. Civ. P. 34(a) (2002)(amended 2006)(providing that "data compilations" must be "translated, if necessary, by the respondent through detection devices into reasonably usable form"). Cf. The Sedona Principles 44-46 cmts. 13.a-c (2004).[20]  Although this interpretive spin on 34(b)(E)(ii) was not perfect -- it had the effect of reading out the alternative requirement of labeling production to correspond to categories in the requests, which cannot easily be construed to bear on file formatting -- it served the purpose in the absence of an alternative basis for regulating the form of ESI production.

From 1980 until the 2006 amendments, courts applied the organized production requirement to both hard copy documents and ESI, because (i) as a textual matter, the term "documents," as defined parenthetically in rule 34(a), still included "data compilations from which information can be obtained," Fed. R. Civ. P. 34 advisory committee's notes to the 1970 amendment; (ii) the evil that the 1980 amendment was designed to combat -- hiding important information in a blizzard of irrelevant material, or jumbling the production's organization to render diligent examination impracticable -- could just as easily thwart ESI discovery, especially in the days before the widespread availability of optical character recognition ("OCR") search technology; and (iii) there being, at that time, no other basis in the rule for regulating the file formatting of ESI production, reading out the 34(b)(E)(iii) requirement would leave producing parties free to turn over ESI in whatever form they wanted -- even if it meant deliberately converting ESI from its easily accessible native format into an inconvenient, obscure, or expensive one.

----

[20]The Sedona Principles are a set of best practice recommendations for e-discovery. See The Sedona Principles (Second Edition): Accommodating the 2006 E-Discovery Amendments, 3 Fed. Cts. L. Rev. 63, 64 (2009).

2.      **The 2006 Amendments.**

The 2006 amendments altered both the rule's scope and procedural portions. <u>See</u> Fed. R. Civ. P. 34 (2006)(amended 2007). Rule 34(a) now reads:

(a) **In General.** A party may . . .

(1)      . . . inspect, copy, test, or sample the following items . . .

(A)      any designated documents <u>or</u> electronically stored information -- including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations -- stored in any medium from which information can be obtained . . . or

(B)      any designated tangible things. . . .

Fed. R. Civ. P. 34(a) (emphasis added). ESI -- now referenced by that name -- is no longer lumped into an expansive parenthetical definition of "documents" under the heading of "other data compilations," but instead placed alongside documents in a three-item list. This change was not haphazard, stylistic, or unintentional. <u>See</u> Fed. R. Civ. P. 34 advisory committee's notes.

Lawyers and judges interpreted the term "documents" to include electronically stored information because it was obviously improper to allow a party to evade discovery obligations on the basis that the label had not kept pace with changes in information technology. But it has become increasingly difficult to say that all forms of electronically stored information, many dynamic in nature, fit within the traditional concept of a document.

Fed. R. Civ. P. 34 advisory committee's notes.

The production procedure in subsection (b) was also amended, retaining the "usual course of business or . . . organiz[ation] and label[ing]" requirement for "documents" in the newly styled (E)(i), and creating a new standard -- that ESI must be produced "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms" -- in the new (E)(ii). Fed. R. Civ. P. 34(b)(2)(E). These two provisions have widely been recognized as codifying the organization-versus-form distinction drawn by earlier cases. "[T]he term 'form'

relates to the diverse types of electronically stored information such as file types ('.pdf') or various storage means. The comments do not refer to the term 'form' as encompassing the organization of all of a party's production." Suarez Corp. Indus. v. Earthwise Techs., Inc., Nos. 07-5577 & 07-2020, 2008 WL 2811162, at *2 (W.D. Wash. July 17, 2008)(Bryan, J.). See Diesel Mach. Inc. v. Manitowoc Crane, Inc., No. 09-4087, 2011 WL 677458, at *3 (D.S.D. February 16, 2011)(Lange, J.).

Of course, just because not all ESI fits into the genus "documents," it does not follow that none of it does; a large portion of ESI, such as electronic mail transmissions or electronic memoranda, would seem to fit comfortably into the everyday definition of documents. Likewise, while textually and purposively the new (E)(ii) does not apply to hard copy documents -- (E)(ii) regulates the form of production, which for hard copy documents is always paper -- it is not obvious why the old requirements, now embodied in (E)(i), should not continue to apply to ESI. Put another way, it is reasonable to read (E)(i) and (E)(ii) as supplementary, rather than alternative, at least for those items that seem to be both documents and ESI. There is something to be gained from imposing basic organization requirements onto massive productions of ESI; artifacts of ESI can be jumbled beyond usefulness -- by dumping them out of their file directories and onto the requesting party -- just as easily as hard copy documents can.

The vast majority of courts have treated (E)(i) and (E)(ii) as supplementary rather than alternative, applying (E)(i)'s organized production requirement to ESI the same way they had before the 2006 amendments, and adding the (E)(ii) form requirement on top of the requirements of (E)(i).[21] See, e.g., Diesel Mach. Inc. v. Manitowoc Crane, Inc., 2011 WL 677458, at *3.

---

[21]While not directly in conflict, there is some tension between the Court's decision in Radian Asset Assurance, Inc. v. College of the Christian Bros. of New Mexico, No. CIV 09-0885, 2010 WL 4928866, at *6 (D.N.M. Oct. 22, 2010)(Browning, J.)("Radian"), and the

- 45 -

(holding that ESI was not produced in the usual course of business and thus must be labeled to correspond to categories in the requests); <u>SEC v. Collins & Aikman Corp.</u>, 256 F.R.D. at 413 (holding that ESI produced in the course of an investigation, "which is by its very nature not routine or repetitive, cannot fall within the scope of the usual course of business," and requiring the SEC to label their responsive ESI by category); <u>MGP Ingredients, Inc. v. Mars, Inc.</u>, No. 06-2318, 2007 WL 3010343, at *3 (N.D.N.Y. Oct. 15, 2007)(Waxse, J.)(stating explicitly that (E)(i) controls the production of ESI). <u>See also</u> Mark S. Sidoti et al., <u>Form and Manner of Production Under FRCP 34</u>, 52 DRI For the Defense 61 (2010) ("This section gives the producing party the option to produce documents (including, of course, ESI) as they are 'kept in the usual course of business'. . . .").

---

interpretation of rule 34(b)(2)(E) the Court adopts here. In <u>Radian</u>, the Court assumed, without much analysis, that rule 34(b)(2)(E)(i) applied to ESI. <u>See</u> 2010 WL 4928866, at *6. In that case, the Court analyzed the production of ESI tape backups under (E)(i) before deciding the issue on other grounds. <u>See</u> 2010 WL 4928866, at *6. Radian Asset, the requesting party, had argued that the College could not produce its ESI as it was kept in the usual course of business as (E)(i) requires. <u>See</u> 2010 WL 4928866, at *6. The Court assumed, as did the parties in their arguments, that (E)(i) applied, and stated that it was unconvinced by Radian Asset's argument that, because the College transferred its ESI to a third party before subpoenaing it back, the College could not produce its records in the same way in which they were maintained before it transferred them. <u>See</u> 2010 WL 4928866, at *6. The Court stated: "Merely transferring material between parties, however, does not necessarily alter how it was kept." 2010 WL 4928866, at *6. The Court concluded: "Thus, the fact that the CSF ESI is stored, in part, on tape backups does not, without more, suggest that the ESI is not in the same state as it was 'kept in the usual course of business.'" 2010 WL 4928866, at *6 (quoting Fed. R. Civ. P. 34(b)(2)(E)(i)). The Court stated that rule 34 is a default rule, and that the Court can order the producing party to meet additional or alternative obligations. <u>See</u> 2010 WL 4928866, at *7. The Court stated: "Consequently, even if the CSF ESI was not kept on tape backups in the course of business, the Court may order that the tapes be produced." 2010 WL 4928866, at *7. The Court also required the College to produce affidavits or declarations stating that the ESI was kept in the usual course of business. <u>See</u> 2010 WL 4928866, at *9. Thus, while the Court does not have any reason to question what the Court did in <u>Radian</u>, it might have analyzed the result differently if it had been presented squarely with the issue in this case and done the analysis here.

Portions of the advisory committee notes on the 2006 amendments support that interpretation. For example, the committee advises that "a Rule 34 request for production of documents should be understood to encompass, and the response should include, electronically stored information <u>unless discovery in the action has clearly distinguished between electronically stored information and documents</u>," reflecting the reality that items of ESI are routinely referred to as documents in common parlance -- and, before 2006, were included in the legal term of art. Fed. R. Civ. P. 34 advisory committee's notes (emphasis added). Most confusingly of all, the term "documents" has a different definition in other rules:

> [T]he term used in Rule 34(a)(1) appears in a number of other amendments, such as those to Rules 26(a)(1), 26(b)(2), 26(b)(5)(B), 26(f), <u>34(b)</u>, 37(f), and 45. . . . References to documents appear in discovery rules <u>that are not amended</u>, including Rules 30(f), 36(a), and 37(c)(2). <u>These</u> references should be interpreted to include electronically stored information as circumstances warrant.

Fed R. Civ. P. 34 advisory committee's notes (emphasis added). Professor John K. Rabiej explains: "[T]he term documents usually includes ESI but only in discovery rules that [were] not amended [in 2006]. . . . The limitation excludes Rule 34, which was amended." John K. Rabiej, <u>Rabiej on Production of ESI</u>, Emerging Issues 2628, at *2 (July 29, 2008)(second and third alterations in original)(quotations omitted). He continues:

> [S]ubparagraph (E)(i) applies *only* to the production of hard-copy documents, while subparagraph (E)(ii) *exclusively* governs the production of ESI. . . .
>
> . . . .
>
> The drafters of the e-discovery amendments to Rule 34 recognized that the procedures in subparagraph (E)(i), which were written to apply to hard-copy documents, did not neatly fit ESI and had to be modified to apply to ESI. In particular, though the procedures in subparagraph (E)(i) work well with paper documents, which generally can be produced in only one form, they are not as effective with ESI, which can exist in different forms. Accordingly, the rulemakers crafted <u>alternative, mutually exclusive</u> procedures in subparagraph (E)(ii) that are designed to apply specifically to ESI, not to supplement the procedures in subparagraph (E)(i).

. . . .

> Though lawyers and judges have long interpreted "documents" to include ESI, Rule 34(a)(1)(A) and the accompanying Committee Note make clear that ESI is separate from and distinguishable from documents. . . . *ESI is not a subset of documents; it is a new category* in addition to documents.

Rabiej, supra at *1-2 (emphasis added)(citing Report of Advisory Committee on Civil Rules to Committee on Rules of Practice and Procedure, July 25, 2005, found in House Document 109-105, at 157-58 (2006) (memorializing that the Committee decided to recommend making "electronically stored information" separate from "documents"); See Richard L. Marcus, E-Discovery & Beyond: Toward a Brave New World or 1984?, 25 Rev. Litig. 633, 649 (2006)("Recognizing 'electronically stored information' as a separate object of discovery" and noting that "[t]reating [ESI] as one subcategory of documents . . . seems not to acknowledge its centrality, [while u]nder the revised rule, it may not be recognized as central, but it is at least recognized as co-equal to documents").

Professor Rabiej explains that there are "substantial practical differences between the two production procedures." Rabiej, supra at *2 (quoting Fed. R. Civ. P. 34). Namely, while (E)(i) document production gives the producing party the right to choose[22] whether to produce "in the

---

[22]There is some disagreement in the caselaw how absolute this right is -- i.e., whether a producing party that keeps its files jumbled in the usual course of its business has any further organization obligation. See, e.g., In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 351, 362-63 (N.D. Ill. 2006)(Cole, M.J.); National Jewish Health v. WebMD Health Servs. Grp., Inc., 305 F.R.D. 247, 255 (D. Colo. 2014)(Daniel, J.). However, the producing party bears the burden of showing, by more than an unsupported representation to the Court, that the manner of production is the manner in which the documents are kept in the usual course of business. See Johnson v. Kraft Foods N. Am., Inc., 236 F.R.D. 535, 540-41 (D. Kan. 2006)(Waxse, M.J.).

A business has an incentive to keep documents organized in some fashion in order to maximize a company's day-to-day efficiency. Or course, documents are sometimes misfiled or misplaced in the usual course of business -- mistakes happen. Some companies, however, have no discernible filing system. Stacks of paper pile up throughout the office with little rhyme or reason. This reality calls to mind Albert Einstein's reflection that "if a cluttered desk is a sign of

usual course of business" or to "label . . . to correspond to the categories in the request," (E)(ii) puts the ball in the requesting party's court by first giving them the option to "specify a form for producing" ESI. Fed. R. Civ. P. 34(b)(2)(E)(i)-(ii). It is only if the requesting party declines to specify a form that the producing party is offered a choice between producing in the form "in which it is ordinary maintained" -- native format -- or "in a reasonably useful form or forms." Fed. R. Civ. P. 34(b)(2)(E)(i)-(ii). A second major difference is that, while (E)(ii)'s ordinary form option is a good match to (E)(i)'s usual course of business option -- in that both allow the producing party to minimize production costs by simply turning over what he has, as is -- (E)(ii)'s "reasonably useful form" option seems to fall far short of (E)(i)'s labeling option in terms of its immediate usefulness to the requesting party. Fed. R. Civ. P. 34(b)(2)(E)(i)-(ii). Both Professor Rabiej and the advisory committee notes imply that, if ESI is produced in a non-text searchable format -- or at least if it cannot be readily converted to a text-searchable format -- it most likely is not "reasonably usable." Cf. Fed. R. Civ. P. 34 advisory committee's notes ("If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature."); Rabiej, supra, at *3 ("Determining whether production

---

a cluttered mind, of what, then, is an empty desk a sign?" See David Burkus, When to Say Yes to the Messy Desk, Forbes Magazine, May 23, 2014, available at https://www.forbes.com /sites/davidburkus/2014/05/23/when-to-say-yes-to-the-messy-desk/#e49179d1fdc6.

   With that backdrop, the Court approaches the rule's text, which states that documents must be produced "as they are kept in the usual course of business." Fed. R. Civ. P. 34(E)(i). It does not say the documents must be produced as they are kept in the usual course of a reasonable business or of an optimally efficient business. The Court concludes that, if the producing party represents through an affidavit that the jumbled documents were produced as they are kept in the usual course of business, rule 34 is satisfied. This ruling does not offend rule 34's primary purpose, which, as noted above, is to dissuade parties from purposefully shuffling relevant documents into the proverbial ten-thousand-card deck. If there is no intent to jumble, the rule's purpose is not thwarted.

of ESI in a form other than in its native file format represents a 'reasonably usable form' will depend on the circumstances of each case. . . . [E]lectronic .tiff images are not word text-searchable, [but] . . . can be converted to word text-searchable images using an Optical Character Recognition software program.").

## LAW REGARDING RULE 45

"Discovery of non-parties must be conducted by subpoena pursuant to Fed. R. Civ. P. 45." Myers v. Andzel, No. 06-14420, 2007 WL 3256879, at *1 (S.D.N.Y.2007)(Sweet, J.). See, e.g., Highland Tank & Mfg. Co. v. PS Int'l, Inc., 227 F.R.D. 374, 379 (W.D. Pa. 2005)(Gibson, J.)("Rule 45 is the only discovery method whereby information may be obtained from a nonparty to the suit."); Blazek v. Capital Recovery Assocs., Inc., 222 F.R.D. 360, 361 (E.D. Wisc. 2004)(Adelman, J.)("[A]ny person may be required to produce documents and any property may be inspected. . . . If the person is not a party to the litigation, the party seeking such discovery must utilize a subpoena to compel such discovery."). Accordingly, courts have denied motions to compel non-parties to produce information where the moving party did not first attempt to subpoena the information that it sought to compel. In Harco National Insurance Co. v. Sleegers Engineering, Inc., No 06-11314, 2014 WL 5421237 (E.D. Mich. Oct. 22, 2014), for example, the Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, denied the plaintiff's motion to compel a former defendant to produce information because the plaintiff had never subpoenaed the information that it sought to compel. See 2014 WL 5421237, at *4. Judge Ludington stated:

> By the terms of Rule 45, a party seeking discovery from a non-party must serve that non-party with a subpoena. Here, there is no evidence that [the plaintiff] served a subpoena on [the former defendant], nor does [the former defendant] make any representations that it did so. Because [the plaintiff] has not complied with the first step of seeking discovery from a non-party, its motion to compel will be denied.

2014 WL 5421237, at *4. <u>Cf.</u> <u>Smith v. Fla. Dep't of Corr.</u>, 369 F. App'x 36, 38 (11th Cir. 2010)(holding that the district court did not abuse its discretion when it denied the plaintiff's motion to compel a non-party to produce information without having validly served the non-party with a subpoena).

Rule 45 was amended on December 1, 2013. The December 1, 2013, amendments made the following changes, shown here with the deleted language stricken and the added material underlined:

**(a)** **In General.**

   **(1)** *Form and Contents.*

      **(A)** *Requirements—In General.* Every subpoena must:

         **(i)** state the court from which it issued;

         **(ii)** state the title of the action, the court in which it is pending, and its civil-action number;

         **(iii)** command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises; and

         **(iv)** set out the text of Rule 45(*d* e) and (*e* d).

      **(B)** *Command to Attend a Deposition -- Notice of the Recording Method.* A subpoena commanding attendance at a deposition must state the method for recording the testimony.

      **(C)** *Combining or Separating a Command to Produce or to Permit Inspection; Specifying the Form for Electronically Stored Information.* A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises may be included in a subpoena commanding attendance at a deposition, hearing,

or trial, or may be set out in a set out in a separate subpoena. A subpoena may specify the form or forms in which electronically stored information is to be produced.

**(D)** *Command to Produce; Included Obligations.* A command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding *person* ~~party~~ to permit inspection, copying, testing, or sampling of the materials.

**(2)** ***Issuing*** ~~***Issued from Which Court.***~~ A subpoena must issue *from the court where the action is pending.* ~~as follows:~~

~~(A)~~ ~~for attendance at a hearing or trial, from the court for the district where the hearing or trial where the hearing or trial is to be held;~~

~~(B)~~ ~~for attendance at a deposition, from the court for the district where the deposition is to be taken; and~~

~~(C)~~ ~~for production or inspection, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made.~~

**(3)** ***Issued by Whom.*** The clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it. That party must complete it before service. An attorney also may issue and sign a subpoena *if the attorney is authorized to practice in the issuing court.* ~~As an officer of:~~

~~(A)~~ ~~a court in which the attorney is authorized to practice; or~~

~~(B)~~ ~~a court for a district where a deposition is to be taken or production is to be made, if the attorney is authorized to practice in the court where the action is pending.~~

**(4)** ***Notice to Other Parties Before Service.*** *If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.*

**(b)** **Service.**

**(1)** ***By Whom and How; Tendering Fees*** ~~***; Serving a Copy of Certain Subpoenas.***~~ Any person who is at least 18 years old and not a

party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law.  Fees and mileage need not be tendered when the subpoena issues on behalf of the United States or any of its officers or agencies. ~~If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party.~~

(2)    ***Service in the United States.*** *A subpoena may be served at any place within the United States.* ~~Subject to Rule 45(c)(3)(A)(ii), a subpoena may be served at any place:~~

   (A)    ~~within the district of the issuing court;~~

   (B)    ~~outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection;~~

   (C)    ~~within the state of the issuing court if a state statute or court rule allows service at that place of a subpoena issued by a state court of general jurisdiction sitting in the place specified for the deposition, hearing, trial, production, or inspection; or~~

   (D)    ~~that the court authorizes on motion and for good cause, if a federal statute so provides.~~

(3)    ***Service in a Foreign Country.*** 28 U.S.C. 1783 governs issuing and serving a subpoena directed to a United States national or resident who is in a foreign country.

(4)    ***Proof of Service.*** Proving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served. The statement must be certified by the server.

(c)    ***Place of Compliance.***

(1)    ***For a Trial, Hearing, or Deposition.*** *A subpoena may command a person to attend a trial, hearing, or deposition only as follows:*

   (A)    *within 100 miles of where the person resides, is employed, or regularly transacts business in person; or*

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** *is a party or a party's officer;*

**(ii)** *is commanded to attend a trial and would not incur substantial expense.*

**(2)** ***For Other Discovery.*** *A subpoena may command:*

**(A)** *production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transactions business in person; and*

**(B)** *inspection of premises at the premises to be inspected.*

**(*d* e)** **Protecting a Person Subject to a Subpoena; ~~Enforcement.~~**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The ~~issuing~~ court *for the district where compliance is required* must enforce this duty and impose an appropriate sanction -- which may include lost earnings and reasonable attorney's fees -- on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises -- or to producing electronically stored information in the form of forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after

the subpoena is served. If an objection is made, the following rules apply:

**(i)**   At any time, on notice to the commanded person, the serving party may move the ~~issuing~~ court *for the district where compliance is required* for an order compelling production or inspection.

**(ii)**   These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)**   ***Quashing or Modifying a Subpoena.***

**(A)**   *When Required.* On timely motion, the issuing court for the district where compliance is required most quash or modify a subpoena that:

**(i)**   fails to allow a reasonable time to comply;

**(ii)**   requires a person *to comply beyond the geographical limits specified in Rule 45(c);* ~~who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;~~

**(iii)**   requires disclosure of privileged or other protected matter, if no exception or waiver applies;

**(iv)**   subjects a person to undue burden.

**(B)**   *When Permitted.* To protect a person subject to or affected by a subpoena, the ~~issuing~~ court *for the district where compliance is required* may, on motion, quash or modify the subpoena if it requires:

**(i)**   disclosing a trade secret or other confidential research, development, or commercial information; *or*

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.~~; or~~

**(iii)** ~~a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.~~

**(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(*d* ~~c~~)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(*e* ~~d~~)** **Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies

as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withhold.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court *for the district where compliance is required* ~~under seal~~ for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(f)** *Transferring a Subpoena–Related Motion. When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances. Then, if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and*

*appear on the motion as an officer of the issuing court. To enforce its order, the issuing court may transfer the order to the court where the motion was made.*

**(g e)** The *court for the district where compliance is required—and also, after a motion is transferred, the* issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena *or an order related to it.* ~~A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).~~

## LAW REGARDING THE RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence." <u>Train v. City of Albuquerque</u>, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401-03). "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." <u>United States v. Gutierrez–Castro</u>, No. 10-2072, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401)("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")). "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'" <u>United States v. Ganadonegro</u>, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note). Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible. <u>See</u> Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

# LAW REGARDING TIME EXTENSIONS

Rule 6(b) of the Federal Rules of Civil Procedure governs the circumstances under which a court can grant a party an extension of time to perform a specific act. The rule states:

> (b) **Extending Time.**
>
> **(1)** ***In General.*** When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> **(A)** with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>
> **(B)** on motion made after the time has expired if the party failed to act because of excusable neglect.
>
> **(2)** **Exceptions.** A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).

Fed. R. Civ. P. 6(b) (bold in original). "Good cause," necessary for an extension of time under rule 6(b)(1)(A), "generally means a substantial reason amounting in law to a legal excuse for failing to perform an act required by law." Black's Law Dictionary 692 (6th ed.1990). See Black's Law Dictionary 251 (9th ed.2009)("***good cause.*** . . . A legally sufficient reason."). Showing good cause is not a particularly demanding requirement. See United States v. Bd. of Cty. Comm'rs., No. 08-0501, 2010 WL 965607, at *4 (D.N.M. February 18, 2010)(Browning, J.)(granting an extension of time for good cause when "many of the impediments to timely filing a response . . . were the result of poor decision-making on the part of Ramirez' counsel," while "others were seasonal circumstances that a party filing a dispositive motion on Christmas Eve might foresee the opposing party raising"); United States v. Portillo-Quezada, Nos. 03-20051, 08-2295, 2010 WL 396309, at *1 (D. Kan. January 27, 2010)(Lungstrum, J.)(finding good cause where attorney argued only that he "needs additional time to contact a witness for the Government at the trial of this case who may recant or change her testimony in material respects.

Completion of research and drafting of the memorandum in support is also needed"); Weingarten v. Optima Commc'n. Sys., Inc., 544 F. Supp. 2d 193, 196 n.1 (S.D.N.Y.2008)(Scheindlin, J.)("Under Rule 6(b)(1)(A) . . . the court may, for good cause, extend the time to move if a request is made before the original time period expires.").

On the other hand, "a finding of excusable neglect under Rule 6(b)[(1)(B)] requires both a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period ." In re Four Seasons Sec. Law Litig., 493 F.2d 1288, 1290 (10th Cir. 1974). See Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987)("[S]ome showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified is normally required.")(emphasis omitted)). "[I]t is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of Rule 6(b)." Quigley v. Rosenthal, 427 F.3d 1232, 1238 (10th Cir. 2005). Excusable neglect, therefore, is a higher burden than good cause.

## ANALYSIS

The Court concludes that rule 34's plain language requires the Defendants to produce electronic documents in the format the Plaintiffs requested. The Court will not compel ADP payroll's deposition, because such a deposition will not redress the harm the Plaintiffs articulate

-- namely, that the Defendants need to produce documents in the requested format. The deposition topics and documents requested in the Deposition Notice are proper discovery under rule 26. They concern payroll records, which bear on whether the FLSA claims exists, so the Court will deny the Defendants' Motion for Protective Order, except as to Deposition Topic 7, because the Plaintiffs agreed to withdraw that topic in favor of a contention interrogatory. Finally, the Court grants the Defendants' one-week extension request, because there is good cause for a slight extension to review a large number of documents.

## I.    RULE 34 REQUIRES THE DEFENDANTS TO PRODUCE ELECTRONIC DOCUMENTS IN THE FORMAT REQUESTED.

The Plaintiffs request that the Defendants produce a set of documents in a "computer readable format such as excel," if those documents are maintained in that format. Plaintiffs' First Set of Requests For Production To Defendants Swire Oilfield Services L.L.C. and Swire Water Solutions Inc. at 6-7, filed January 26, 2017 (Doc. 36-1)("Requests for Production"). Rule 34 requires the responding party to produce items within its "possession, custody, or control," and that, "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(a)(1), (b)(2)(E)(ii). Here, the documents are with a third-party vendor, ADP Payroll. See Status Report at 1. The Plaintiffs contend that the Defendants have "control" over the requested records, because, among other things, the Defendants have "the practical ability to request its payroll vendor to produce an electronic version of [the] information" requested. First Motion to Compel at 6. The Defendants concede that, after contacting ADP payroll, "ADP stated that it has Swire's hours and pay data in its payroll module available in [a] format that can [be] imported into excel." Status Report at 1, filed April 3, 2017 (Doc. 51).

The Court concludes that the Defendants have "control" over the requested records based on the Defendants' relationship with ADP Payroll and their concession that ADP Payroll has the data requested. See United States v. 2121 Celeste Road SW, Albuquerque, N.M., 307 F.R.D. 572, 590 (D.N.M. 2015)(Browning, J.)("[C]ourts have broadly construed control as 'the legal right, authority, or practical ability to obtain the materials sought upon demand' . . . [I]f a person, corporation, or a person's attorney or agent can pick up a telephone and secure the document, that individual or entity controls it.")(quoting S.E.C. v. Credit Bancorp, Ltd., 194 F.R.D. 469, 471 (S.D.N.Y. 2000)(Sweet, J.)). The Court also concludes the Defendants must produce the records in the format requested. Rule 34's language indicates that the producing party must produce documents in the requested form. See Fed. R. Civ. P. 34(b)(2)(E)(ii)("[I]f a request does not specify a form for producing electronically stored information, a party must produce it in a form . . . [in] which it is ordinarily maintained."). Here, the Plaintiffs have specified a form, see Requests for Prod at 6-7 ("If this information is maintained in a computer readable format, such as excel, please produce in the computer readable format."), so the Defendants must produce it in that format.

## II.    THE COURT DOES NOT COMPEL ADP PAYROLL'S DEPOSITION, BECAUSE THE PLAINTIFFS SEEK DOCUMENTS AND NOT TESTIMONY.

The Plaintiffs move to compel ADP Payroll's deposition. See Third Motion to Compel at 1. They contend that such a deposition is proper, because the Defendants have suggested in their Enlargement Motion that the documents from ADP payroll will not be produced in their native electronic format. See Third Motion to Compel at 1. The Plaintiffs conclude that a deposition is justified, because they requested those records nine months ago, they still have not received the requested records, and they should receive the records in the native format as requested. See Third Motion to Compel at 1. The Defendants have not responded to the Third Motion to

Compel.  The Court agrees that the Plaintiffs should receive the electronic documents in the format requested.  <u>See</u> Fed. R. Civ. P. 34(b)(2)(E)(ii); <u>supra</u> at 71-72; Fed. R. Civ. P. 45(e)(1)(B).  The question remains, however, whether the Court should compel the deposition of ADP Payroll -- a third party.

"[P]arties may compel a nonparty to produce documents while 'spar[ing]' everyone 'the necessity' of a needless deposition."  <u>El Encanto, Inc. v. Hatch Chile Co.</u>, 825 F.3d 1161, 1163 (10th Cir. 2016)(Gorsuch, J.)(quoting Fed. R. Civ. P. 45(a)(1) advisory committee's note to 1991 amendment.).  The Court has recognized before that "nonparties enjoy considerable protection from discovery requests."  <u>Simon v. Taylor</u>, No. 12-0096, 2014 WL 6633917, at *21 (D.N.M. November 18, 2014)(Browning, J.).  For example, "[c]ourts may refuse discovery requests aimed at nonparties in cases where the same testimony or documents could instead be obtained from a party to the action," and a "few courts even impose a heightened relevancy requirement for nonparty discovery requests."  <u>Simon v. Taylor</u>, 2014 WL 6633917, at *22 (quoting Ryan W. Scott, <u>Minimum Contacts, No Dog: Evaluating Personal Jurisdiction for Nonparty Discovery</u>, 88 Minn. L. Rev. 968, 973 (2004)(footnotes omitted)).[23]  A rule 45 subpoena is the proper and only method to conduct discovery of a nonparty.  <u>See</u> <u>Simon v. Taylor</u>, 2014 WL 6633917, at *23.

---

[23]The Court does not adopt a higher relevancy requirement for nonparty discovery requests, and disagrees with such an approach.  Evidence is relevant if:

    (a)      it has any tendency to make a fact more or less probable than it would be without the evidence; and

    (b)      the fact is of consequence in determining the action.

Fed. R. Evid. 401.  Relevant evidence is relevant no matter who has the documents.

Here, the Plaintiffs have appropriately issued a subpoena on a nonparty for a deposition and for documents. See Subpoena to Testify at a Deposition in a Civil Action at 1 [at 5 on CM/ECF], (issued April 21, 2017), filed May 2, 2017 (Doc. 60-1)("ADP Payroll Subpoena"). The Court notes that ADP Payroll's deposition is not necessary for the Plaintiffs to obtain the documents they seek in the format they request, and, at this juncture, the Court does not find a reason to compel ADP Payroll's deposition. The Plaintiffs' grievance, as the Third Motion to Compel expresses, is, again, that the Plaintiffs might not receive documents in the electronic format requested. See Third Motion to Compel at 1. A deposition will not solve that problem. The documents furnished as requested will solve that problem. Accordingly, the Court concludes that there is no sound reason to compel a "needless deposition," El Encanto, Inc. v. Hatch Chile Co., 825 F.3d at 1163, and, instead, will order the Defendants to produce the electronic documents as the Plaintiffs request. The Court dismisses this request without prejudice, because there may be a proper purpose for which the Plaintiffs may seek to compel a third-party deposition of ADP Payroll at a later date.

## III. THE COURT DENIES THE MOTION FOR PROTECTIVE ORDER, BECAUSE THE TESTIMONY SOUGHT BEARS ON RELEVANT PAYROLL DATA.

The Defendants move for a protective order on topics 1, 2, 3, 7, 8, and 9 presented in the Plaintiffs' Deposition Notice. See Motion for Protective Order 2-4. At the May, 2017, Hearing, the Court orally denied the Motion for Protective Order concerning topics 1, 2, and 9, see May Tr. at 7:2-8:4 (Court), id. at 11:13-15 (Court); id. at 21:11-14 (Court), and granted in part and denied in part the Motion for Protective Order, without prejudice, concerning topic 7 -- suggesting that the Plaintiffs craft a contention interrogatory instead, see 18:12-19 (Court).[24] It reasoned that topics 1 and 2 are appropriate deposition topics, because the Defendants have

---

[24]The parties did not orally argue topics 3 and 8.

contracted for payroll with a third party, so there is some uncertainty about all of the relevant documents' locations.  See May Tr. at 7:14-18 (Court); id. at 11:7-9 (Court)("This is the purpose of 30(b)(6) . . . does the plaintiff have all the documents here.").   Accordingly, it is appropriate to ask the Defendants where those payroll documents might be located, how it procured those documents, who might have more documents, and questions of that nature.  See May Tr. at 11:9-19 (Court).  Topic 9 is appropriate, because that topic covers relevant questions about relevant documents -- "traditional 30(b)(6)" questions.  May Tr. at 21:8-14 (Court).

The Court has discretion to grant a protective order pursuant to rule 26(c).  See Morales v. E.D. Etnyre & Co., 229 F.R.D. at 663.  Rule 26(c) provides that, upon a good-cause showing, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which may include forbidding disclosure or discovery.  Fed. R. Civ. P. 26(c)(1)(A).  "It is the party seeking the protective order who has the burden to show good cause for a protective order."  Velasquez v. Frontier Med. Inc., 229 F.R.D. 197, 200 (D.N.M. 2005)(Browning, J.).  The party seeking the protective order must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  Gulf Oil Co. v. Bernard, 452 U.S. at 102 n.16.

The Court concludes, for largely the same reasons that it did at the May, 2017 Hearing, that it will deny the Motion for Protective Order as to topics 1, 2, and 9.  Relevancy bears on the protective-order analysis.  See Price v. Cochran, 66 F. App'x 781, 786 (10th Cir. 2003)(affirming a district court's denial of a protective order motion, because the documents at issue were relevant)(unpublished); Walker v. THI, No. 09-0060, 2011 WL 2728332, at *1 (D.N.M. July 4, 2011)(Browning, J.)(granting a protective order motion, because the documents at issue were irrelevant).  Topics 1, 2, and 9 concern relevant issues or documents.  Topic 1 covers Swire

Oilfield's agreements and interactions with any payroll company from June 21, 2013, to the present. See Deposition Notice at 6. Topic 2 covers Swire Oilfield's attempts to locate documents -- including payroll documents -- responsive to the Plaintiffs' Requests for Production. See Deposition Notice at 6. As the Court reasoned previously, questioning on those topics could uncover the locations of additional payroll records bearing on the Plaintiffs or the Plaintiff class. The Plaintiffs can succeed on their FLSA claims only if they can demonstrate that they were paid less than the overtime or minimum wage that they were owed. See Complaint ¶¶ 66-82, at 12-14. Those payroll records, accordingly, are relevant, because they will likely show how much the Plaintiffs were paid, so they have a tendency to make it either more or less probable that the Plaintiffs were adequately paid under the FLSA. See United States v. Gutierrez–Castro, 2011 WL 3503321, at *3 ("Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The payroll records may also reveal more potential Plaintiffs, which is a fact of consequence, because it bears on the class-action numerosity requirement. Topic 9 covers Swire Oilfield's processing of payroll and time tracking methods of its workers, see Deposition Notice at 7, and those records could uncover information reflecting how much time a number of the Plaintiffs worked. As with the payroll records, the time worked also tends to demonstrate whether the Plaintiffs were paid the requisite overtime and minimum wage under the FLSA. The number of hours worked is a component of the Plaintiffs' wage calculation, see Complaint ¶¶ 68, 77, at 12-13, 29 U.S.C. §§ 206-07, so time-worked documentation is relevant to whether the Plaintiffs were properly paid under the FLSA.

Topic 3 is also relevant. It covers the Defendants' basis for segregating the document production into three alphabetical subgroups. See Deposition Notice at 6. Questioning on this subject could reveal whether particular individuals belong to a particular Plaintiff class. See Hammond v. Lowe's Home Centers, Inc., 216 F.R.D. 666, 671 (D. Kan. 2003)(Waxse, M.J.)(concluding that information defining a proposed plaintiff class is relevant material). Topic 8 encompasses the software program or application that Swire Oilfield uses to process payroll, the data stored on the system, and whether the system can export data. Deposition Notice at 6. That topic is relevant, because it could reveal whether the Defendants have collected additional payroll data on the Plaintiffs. Although not all of the additional payroll data collected necessarily bears on whether the Plaintiffs were adequately paid under the FLSA, it is likely that this payroll data bears on how much the Plaintiffs were paid or could corroborate other payroll evidence already collected. Accordingly, it is relevant. See United States v. Spotted Bear, 160 F. App'x 650, 651 (9th Cir. 2005)(holding that corroborative evidence is relevant).

Although topics 1, 2, 3, 8, and 9 are relevant, the Defendants contend that a deposition on those topics is unduly burdensome. See Motion for Protective Order 2-5. Whether a request is unduly burdensome turns on the particular facts of the case, bearing in mind relevance, the request's breadth, the request's time period, and the request's particularity. See XTO Energy, Inc. v. ATD, LLC, 2016 WL 1730171, at *27 (D.N.M. April 1, 2016)(Browning, J.). Regarding Topic 1, the Defendants aver that the topic's terms are vague and overbroad, so they cannot provide a proper corporate representative to testify. See Motion for Protective Order at 2-3 ("[The topic] requests 'all interactions with any payroll company.' . . . The term 'payroll type company is vague.")(quoting Deposition Notice at 6). The Court disagrees. By its terms, the

topic is limited from June 21, 2013, to the present, which covers a relevant time period.  See Benavidez v. Sandia National Labs., 319 F.R.D. 696, 727 (D.N.M. 2017)(Browning, J.)(ruling that the time frame of a request bears on whether a production request is unduly burdensome). The term "payroll type company," although not specifically defined, implicates a narrow set of companies that the Plaintiffs could mean.  Indeed, based on representations from the Defendants, there are only two payroll companies at issue -- ADP Payroll and Corban OneSource.  It is not overly burdensome for the Defendants to produce a representative to talk about its relations with two companies over a defined period.  Cf. E.E.O.C. v. Citicorp Diners Club, Inc., 985 F.2d 1036, 1040 (10th Cir. 1993)(ruling that it was not unduly burdensome for a company to comply with a subpoena that would "require two full-time employees working approximately six months" to complete, because the preoccupation of those two employees would not "seriously hinder normal operations of the business," which employed 1,100 people).  On the other topics, the Defendants assert that "[t]he burden and expense of such a deposition outweigh its likely benefits," because the Plaintiffs have already produced responsive documents to the topics.  Motion for Protective Order at 4.  See id. at 5.  That responsive documents have been produced do not make a deposition about those documents unduly burdensome.  Questions concerning documents produced is a classic use of a deposition.  See 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2014, 289 n.2 (4th ed. 2010)("[T]he mere fact that the matters regarding which discovery is sought happen to be within the knowledge of the moving party, is no objection to taking a deposition of the adverse party.").[25]  The Defendants articulate no other

_____

[25]Wright and Miller explain that depositions about information already obtained, such as information gained through documents already produced, serve the purpose of "transforming [the information] into such shape as would render them admissible evidence."  Wright & Miller, supra § 2014, 289 n.2  "Moreover, it is manifestly useful and desirable, with a view to diminishing the expense of trials and the time consumed by them, to ascertain in advance to what

reason why producing the documents would unduly burden the Defendants -- e.g., that it would unduly tax the Defendants' resources or hinder their normal course of business to produce the documents. The Court, accordingly, denies the Motion for Protective Order as to topics 1, 2, 3, 8, and 9.

On topic 7, the Plaintiffs agreed at the May, 2017 Hearing to withdraw the topic and submit a contention interrogatory, although they expressly reserved their right to cross examine a witness about the subject. See May Tr. at 14:16-23 (Leyendecker). The Court, subsequently, granted the Motion for Protective Order without prejudice to topic 7, so that the Plaintiffs could renew a request for information on the topic in a 30(b)(6) format if the contention interrogatory did not yield the information sought. See May Tr. at 18:12-19:4 (Court). The parties have not signaled to the Court since the May, 2017 Hearing that the contention interrogatory agreement failed. The Court, accordingly, will not upset an agreement between the two parties and grants the Motion for Protective Order as to topic 7. See Murphy v. Deloitte & Touche Group Ins. Plan, 619 F.3d 1151, 1164 (10th Cir. 2010)("[C]ontrol of discovery is entrusted to the sound discretion of the trial courts. . . . [I]n exercising that discretion the district court must bear in mind . . . the need for a speedy, inexpensive, and efficient resolution of the claim."); Evans v. VonFeldt Realtors, Inc., No. 82-1737, 1989 WL 31398, at *1 (D. Kan. March 30, 1989)(Crow, J.)("Obviously, other discovery is allowed upon the parties' own agreement.").

Finally, in their Deposition Notice, the Plaintiffs requested additional documents, which the Defendants orally objected to producing. See Tr. at 22:12-15 (Gatling). The Plaintiffs

extent facts will be admitted by the adverse party." Wright & Miller, supra § 2014, 289 n.2. The Court agrees with this analysis. Sometimes the raw information a document provides is insufficient or confusing without a witness to speak about it. For example, many relevant documents include jargon, acronyms, or other abbreviations that are not understandable absent deposition questions.

requested: (i) all agreements between Swire Oilfield and payroll companies, including Corban OneSource, that were in force between June 21, 2013, to the present; (ii) all emails and other documents dated after Swire Oilfield ended its business relationship with Corban OneSource, which related to Swire Oilfield's attempts to obtain payroll data from Corban OneSource; (iii) all communications between Swire Oilfield and Corban OneSource that relate to the Plaintiffs' first production requests in this case; (iv) all emails and other documents, dated between January 1, 2016, to the present that relate to Swire Oilfield's ability to request or obtain records from Corban OneSource; (v) all documents related to deposition topic 7; and (vi) a copy of all user manuals and similar guides for the software Swire Oilfield's uses to process payroll data and track its workers time since June 21, 2013. <u>See</u> Deposition Notice at 6. The Defendants argued that the documentation was not relevant and that producing them would be disproportionate to the needs of the case. <u>See</u> Tr. at 23:2-4 (Gatling); <u>id.</u> at 25:4-8 (Gatling). The Court ruled orally that the documents were relevant to allow the Plaintiffs to explore where all payroll records might be and that it would not unduly burden the Defendants to produce the documents, because they were tied to relevant deposition topics. <u>See</u> 25:17-26:17 (Court); <u>id.</u> at 28:16-18 (Court).

The Plaintiffs requested these documents pursuant to rule 30(b)(2). <u>See</u> Deposition Notice at 1. Rule 30(b)(2) and rule 34 requests for documents are heavily interrelated, and courts often require the documents sought under rule 30(b)(2) to meet rule 34 standards. <u>See</u> <u>Kretek v. Board of Comm'rs of Luna Cty.</u>, No. 11-0676, 2012 WL 1283840, at *2 (D.N.M. October 19, 2012)(Wormuth, M.J.)(collecting cases). The advisory committee notes to rule 30(b)(5), rule 30(b)(2)'s predecessor, advise, however, that there is at least one distinction between rule 30(b)(2) and rule 34 document production requests:

> Whether production of documents or things should be obtained directly under
> Rule 34 or at the deposition under this rule will depend on the nature and volume

> of the documents or things. Both methods are made available. When the documents are few and simple, and closely related to the oral examination, ability to proceed via this rule will facilitate discovery. If the discovering party insists on examining many and complex documents at the taking of the deposition, thereby causing undue burdens on others, the latter may, under Rules 26(c) or 30(d), apply for a court order that the examining party proceed via Rule 34 alone.

Fed. R. Civ. P. 30 advisory committee's notes. The note suggests that rule 30(b)(2) yields to rule 34 upon motion and if it would be an undue burden on the party to produce the records at deposition. See Fed. R. Civ. P. 30 advisory committee's notes. It does not indicate that the scope of discovery test -- as mandated by rule 26 -- is different between rule 30(b)(2) requests and rule 34 requests. The Court therefore applies rule 26's test to determine whether the documents are properly requested.

The Court concludes that its analysis at the May, 2017 Hearing was correct. The agreements between Swire Oilfield and Corban OneSource, and the communications between the two companies -- requests (i)-(iv) -- bear on the payroll data or the location of the payroll data that Corban OneSource generated for Swire Oilfield. As reasoned above, the payroll data is relevant to the Plaintiffs' FLSA claims, because it can demonstrate whether the Plaintiffs were adequately paid under the FLSA's overtime and minimum wage requirements. See supra at 77-78. Moreover, producing documents, which bear on relevant deposition topics, is typically acceptable discovery. See Wright & Miller, supra § 2014, 289 n.2. Request (v) corresponds with deposition topic 7. The Defendants agreed to a contention interrogatory for topic 7, so the Court did not explore topic 7's relevance. Topic 7 concerns all facts, which bear on rule 23(b)(3)'s superiority requirement. See Deposition Notice at 5. Facts bearing on superiority are relevant so long as the Plaintiffs intend to seek class certification under rule 23(b)(3). See Hill v. Butterworth, 170 F.R.D. 509, 519 (N.D. Fla. 1997)(Paul, C.J.). The Plaintiffs have not yet signaled with a formal motion how they intend to move for certification, but the request here

signals that the Plaintiffs intend to use rule 23(b)(3), so facts on that subject are relevant. Finally, user manuals and guides on the software that Swire Oilfield uses or has used since June 21, 2013, to process payroll data and track its workers time -- request (vi) -- is relevant to understand the raw data in the payroll records, which bears on whether the Plaintiffs were adequately paid under the FLSA.

The requests, moreover, are not unduly burdensome, because many are limited to a specific time period -- specifically, requests (i), (ii), (iv), and (vi) -- and producing the documents relevant to all requests is unlikely to onerously tax the Defendants' resources. For example, there are most likely a small and finite number of user manuals that the Defendants have used for their payroll data software -- request (vi). Similarly, there are likely few agreements between Swire Oilfield and their payroll companies from June 21, 2013 to the present -- request (i). Although requests (ii)-(v) might implicate many more documents than requests (i) and (vi), the Defendants have not concretely represented -- with, for example, an estimate of the number of documents implicated or a number of man-hours needed to produce those documents -- that production would require an inordinate amount of time, dedication, or resources. See EEOC v. Citicorp Diners Club, Inc., 985 F.2d at 1040; Velasquez v. Frontier Med. Inc., 229 F.R.D. at 200 ("It is the party seeking the protective order who has the burden to show good cause for a protective order."). Accordingly, the Court denies the Defendants' oral protective order motion for the document requests in the Deposition Notice.

## IV.  THE COURT GRANTS THE ENLARGEMENT MOTION, BECAUSE THE DEFENDANTS REQUEST A SHORT, ONE-WEEK EXTENSION TO REVIEW MANY DOCUMENTS.

In the Court's Subpoena Order, the Court orders ADP Payroll and Corban OneSource to produce the records that the Plaintiffs' subpoena to Swire Oilfield on May 30, 2017 requested

and orders Swire Oilfield to produce those records to the Plaintiffs on June 14, 2017. <u>See</u> Subpoena Order at 1. On June 14, 2017, the Defendants moved to extend the June 14, 2017 deadline one week to June 21, 2017. <u>See</u> Enlargement Motion at 1-2. They argued there was good cause for an extension, because ADP payroll produced the documents in PDF format, which had to be reviewed and redacted to protect personal Swire Oilfield employee information, and because Corban OneSource produced non-responsive records in PDF format, which also had to be reviewed and redacted. <u>See</u> Enlargement Motion at 1-2. The Defendants also represent that, as it stated at the May, 2017 Hearing, the Defendants' lead counsel was on vacation the week of June 5, 2017. <u>See</u> Enlargement Motion at 2. The Plaintiffs do not respond to the Enlargement Motion, but have argued in another context that the Defendants' discovery strategy in this case is to: "Delay. Delay. And then delay some more." Protective Order Response at 6.

There must be good cause to extend a discovery deadline. <u>See</u> Fed. R. Civ. P. 6(b); <u>Bolden v. Topeka</u>, 441 F.3d 1129, 1151 (10th Cir. 2006)("[The Plaintiff] has offered no colorable reason why the discovery deadlines should have been extended."). In determining good cause, one factor a trial court can consider is whether the requesting party has engaged in dilatory tactics. <u>See</u> <u>Ruleford v. Tulsa World Pub. Co.</u>, 266 F. App'x. 778, 786 (10th Cir. 2008)(unpublished). As the Court has stated before, "[s]howing good cause is not a particularly demanding requirement." <u>Abraham v. WPX Energy Prod. LLC</u>, No. 12-0917, 2013 WL 5934415, at *5 (D.N.M. October 21, 2013)(Browning, J.)(granting an extension of time, because the parties requested an extension to "allow discovery and to coordinate the timing" of the case with another). "The trial court has discretion in granting or denying an extension request. <u>See</u> <u>Bolden v. Topeka</u>, 441 F.3d at 1151.

Because the Plaintiffs failed to respond to the Enlargement Motion, the Plaintiffs have consented to the Court granting the Enlargement Motion. See D.N.M. LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."). Even if the Plaintiffs had responded, however, the Court concludes that there is good cause for an extension and grants the Enlargement Motion. The requested relief is short -- a one week extension. The Defendants represent that they began reviewing the documents immediately upon receipt from ADP Payroll and Corban OneSource, see Enlargement Motion at 1, and the Court has no reason to doubt that representation. Moreover, if this production is similar to the original production, the Defendants had thousands of documents to review. Analyzing that many documents can take time. The Court is mindful of the Plaintiffs' argument that the Defendants have purposefully delayed discovery in this case, but the Court concludes that a short one-week extension request evidences no intent to inflict unnecessary delay, especially here where there was no follow-up extension request. The Court, therefore, concludes there is good cause for the extension and grants the Defendants' Enlargement Motion.

**IT IS ORDERED** that: (i) the Plaintiffs' Motion to Compel Electronic Payroll Records, filed January 26, 2017 (Doc. 36), is granted; (ii) the requests in the Defendants' Notice of Non-Appearance and Motion for Protective Order, filed April 6, 2017 (Doc. 52), are granted in part and denied in part; (iii) the Plaintiffs' Motion to Compel Swire to Comply with 30(b)(6) Notice, filed April 21, 2017 (Doc. 57), is granted in part and denied in part; (iv) the Defendants' Motion for Enlargement of Time to Produce Documents Received from ADP Payroll, Inc. and Corban OneSource LLC, filed June 14, 2017 (Doc. 73), is granted; and (v) the Plaintiffs' Motion to Compel Third Party (ADP) Deposition, filed June 15, 2017 (Doc. 76), is denied. The Court:

(i) orders the Defendants to produce the records responsive to the Plaintiffs' First Set of Requests For Production To Defendants Swire Oilfield Services L.L.C. and Swire Water Solutions Inc. ¶¶ 1-3, at 6-7, filed January 26, 2017 (Doc. 36-1), in "a computer readable format, such as excel" as the Plaintiffs request; (ii) denies the Plaintiffs' request to compel ADP Payroll Inc.'s deposition without prejudice to renew if the Plaintiffs decide they need to depose ADP Payroll for some other reason at a later date; (iii) denies the Defendants' requests for a protective order regarding Topics for Examination 1, 2, 3, 8, and 9 in the Deposition Notice ¶¶ 1-3, 8-9, at 5-6, orders the Defendants to produce records responsive to the documents requested in the Deposition Notice ¶¶ 1-6, at 6, and grants the request for a protective order regarding Topic for Examination 7 in the Deposition Notice ¶ 7, at 5; and (iv) grants the Defendants a one-week extension of time to produce the documents as the Court ordered in the Order, filed May 25, 2017 (Doc. 69).

_____
UNITED STATES DISTRICT JUDGE

- 75 -

*Counsel:*

Daniel M. Faber
Law Office of Daniel Faber
Albuquerque, New Mexico

-- and --

Patrick Leyendecker
Ahmad Zavitsanos Anaipakos Alavi & Mensing, P.C.
Houston, Texas

-- and --

Galvin B. Kennedy
Udyogi Hangawatte
Kennedy Hodges L.L.P.
Houston, Texas

       *Attorneys for the Plaintiffs*

Charlotte A. Lamont
Littler Mendelson, P.C.
Albuquerque, New Mexico

-- and --

Yvette V. Gatling
Littler Mendelson, P.C.
Tysons Corner, Virginia

       *Attorneys for the Defendants*